James ROWE, Jane Rowe,
John Doe, Plaintiffs,

v.

Richard BURTON, Commissioner, Alaska Dept. of Public Safety, and Bruce M. Botelho, Alaska Attorney General, Defendants.

No. A94–206 Civil.

United States District Court,
D. Alaska.

July 27, 1994.

Darryl L. Thompson, for plaintiffs James Rowe and Jane Rowe.

Verne E. Rupright, Stepovich, Kennelly & Stepovich, for plaintiff John Doe.

James L. Hanley, State of Alaska Atty. Gen. Office, Sp. Prosecution & Appeals, for defendants Richard Burton, Com'r, Alaska Dept. of Public Safety and Bruce M. Botelho, Alaska Atty. Gen.

Suzanne H. Lombardi, Faulkner, Banfield, Doogan & Holmes, for Alaska Network on Domestic Violence & Sexual Assault.

## ORDER FROM CHAMBERS

SEDWICK, District Judge.

### INTRODUCTION

In 1994 Alaska enacted a law requiring persons who are "sex offenders" to register with police authorities. The law, ch. 41 SLA 1994 (hereinafter "the Registration Act"), will become effective on August 10, 1994.[1] A sex

---

1. Except where the Alaska Legislature has provided otherwise by a two-thirds vote, legislation approved by the governor becomes effective 90 days after gubernatorial approval. AS

01.10.070. The Registration Act was approved on May 12, 1994, making it effective August 10, 1994, unless otherwise provided by the legislature. The Registration Act purports to require

offender is defined as one who has been convicted of a "sex offense" in Alaska or elsewhere. § 4 ch. 41 SLA 1994. A sex offense is a violation of any of several specified sections of Alaska law, or a similar law in another jurisdiction.[2] *Id.* The specified laws are sexual assault of any degree,[3] all degrees of sexual abuse of a minor save the fourth degree,[4] incest,[5] unlawful exploitation of a minor[6], distributing child pornography,[7] and promoting prostitution in the first degree.[8]

Two men who pled no contest to sex offenses and the wife of one, have filed the instant action challenging the law under the United States and Alaska constitutions. The court has before it plaintiffs' motion for preliminary injunction as well as a motion to allow plaintiffs to proceed under pseudonyms.[9] The motions have been fully briefed. Oral argument was heard on June 29, 1994.

## DISCUSSION

## I. *PRELIMINARY INJUNCTION*

### A. *Standards For Injunctive Relief.*

■ Preliminary injunctive relief is appropriate when a plaintiff establishes (1) probable success on the merits and irreparable harm if relief is denied, or (2) that there are serious questions on the merits and the balance of hardship tips sharply in favor of plaintiff. *Rent–A–Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 602 (9th Cir.1991). The alternatives illuminate what is really a single continuum of concern which evaluates two factors that must always be considered: "The likeli-

hood of the plaintiff's success on the merits; and the relative balance of potential hardships to the plaintiff, defendant, and public." *State of Alaska v. Native Village of Venetie*, 856 F.2d 1384, 1389 (9th Cir.1988). The higher a plaintiff's probability of success, the less the balance of hardship need tip in plaintiff's favor to support issuance of an injunction. *Id.*

### B. *Probability Of Success On The Merits.*

Plaintiffs challenge the Registration Act on the grounds that it is an *ex post facto* law, that its enforcement against the plaintiff sex offenders violates their plea bargain contracts, that the Registration Act violates the Fourth Amendment prohibition of unreasonable searches and seizures, and that it violates plaintiffs' rights to privacy. To assess the plaintiffs' probability of success, it is first necessary to examine the Registration Act.

### 1. *The Registration Act*

Alaska House Bill 69, requiring convicted sex offenders to register with local authorities after their release, was introduced in the Alaska legislature in response to alarming statistics showing that those convicted of sex offenses were likely to commit further crimes upon release. The committee minutes on the bill also include testimony that, unlike other criminals, sex offenders do not become less dangerous over time.[10] Section 1 of the Registration Act sets out the legislative findings upon which the Registration Act rests:

> LEGISLATIVE FINDINGS. The legislature finds that
>
> (1) sex offenders pose a high risk of reoffending after release from custody;

---

registration by July 1, 1994. § 12 ch. 41 SLA 1994. If the Registration Act were passed by the necessary two-thirds vote, that provision might be construed to establish an effective date of July 1, 1994. The Attorney General, who is counsel for defendants, has represented that the actual effective date is August 10, 1994. The court relies upon that representation.

2. § 4 ch. 41 SLA 1994.

3. AS 11.41.410—.425.

4. AS 11.41.434—.438. By excluding commission of the crime in the fourth degree, the legislature has excluded persons under the age of sixteen from the duty to register. *See* AS 11.41.440. Juveniles cannot be prosecuted for the other

crimes for which registration is required unless they are deemed suitable for prosecution as adults.

5. AS 11.41.450.

6. AS 11.41.455.

7. AS 11.61.125.

8. AS 11.66.110.

9. Docket Numbers 3 and 2, respectively.

10. Plaintiffs' Reply to Opposition Re: Preliminary Injunction (Docket No. 26), Exhibit B.

(2) protecting the public from sex offenders is a primary governmental interest;

(3) the privacy interests of persons convicted of sex offenses are less important than the government's interest in public safety; and

(4) release of certain information about sex offenders to public agencies and the general public will assist in protecting the public safety.

§ 1 ch. 41 SLA 1994.

A person who has been convicted of a violation of Alaska law designated a sex offense in the Registration Act, or a similar violation in another jurisdiction, is required to register with the state trooper post or municipal police department closest to the offender's place of residence within seven days following release from incarceration, or within fourteen days of becoming physically present in Alaska.[11] To comply with the registration requirement, the sex offender must complete a form which includes the offender's name, address, place of employment, date of birth, each conviction of a registrable sex offense, date of each conviction, place and court where convicted, all aliases, and a driver's license number.[12] In addition, the sex offender must allow the police to obtain a complete set of fingerprints and a photograph.[13] When a registered sex offender's address changes, the offender must provide written notice within 10 days.[14]

In addition, for the duration of the duty to register, the sex offender must provide an annual statement updating all the information required by the original form. The registration duty's duration continues for the life of the offender in the case of an offender with two or more convictions, but ends 15 years after an offender's unconditional discharge from a single sex offense conviction.[15] Section 2 of the Registration Act makes failure to register a Class A misdemeanor.[16]

The Registration Act creates a central registry of sex offenders to be maintained by the Department of Public Safety.[17] The law requires the Department to adopt regulations allowing the sex offender to review registration information and to request corrections in the information.[18] The Registration Act makes some information in the central registry confidential, but allows for public disclosure of much of the information pursuant to regulations to be adopted by the Department of Public Safety. Information which the regulations may allow to be disclosed consists of the offender's name, address, birthdate, photograph, and place of employment.[19] Also subject to disclosure is information regarding the underlying reason for registration, including the crime of conviction (except that in cases of incest the crime must be described only as a "felony sexual abuse of a minor") and the date, place, and court of conviction, together with the length of sentence.[20]

### 2. *Ex post facto considerations*

■ Article 1, § 10 of the Constitution denies states the power to enact *ex post facto*

---

**11.** AS 12.63.010(a) as enacted by § 4 ch. 41 SLA 1994. In the case of persons being supervised on probation or parole by Alaska as a receiving state or in the case of persons released from an out-of-state correctional facility where time was being served for violation of Alaska law, the period is seven days. *Id.*

**12.** AS 12.63.010(b)(1) as enacted by § 4 ch. 41 SLA 1994.

**13.** AS 12.63.010(b)(2) as enacted by § 4 ch. 41 SLA 1994.

**14.** AS 12.63.010(c) as enacted by § 4 ch. 41 SLA 1994.

**15.** AS 12.63.020 as enacted by § 4 ch. 41 SLA 1994.

**16.** AS 11.56.840 as enacted by § 2 ch. 41 SLA 1994.

**17.** AS 18.65.087 as enacted by § 5 ch. 41 SLA 1994.

**18.** AS 18.65.087(d) as enacted by § 5 ch. 41 SLA 1994.

**19.** AS 18.65.087(b) as enacted by § 5 ch. 41 SLA 1994.

**20.** Defendant represented that the regulations necessary to implement the central registry provisions found in § 5 of the Registration Act have not yet been adopted. This representation has not been challenged by plaintiffs, and there are no such regulations in the latest available supplement to the Alaska Administrative Code.

laws, which are laws punishing people for acts done before the law's passage. The Constitutional provision forbids "Any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" *Weaver v. Graham*, 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981) (citation omitted). Plaintiffs characterize the Registration Act as a law which punishes sex offenders for their past conduct. Defendants characterize it as a proper exercise of the state's police power which does not punish past offenses, but regulates present conduct.

The Alaska legislature explained its purpose in passing the Registration Act in terms of providing protection to the public from persons thought to pose an unusual risk. Yet, the legislature's expressed purpose is not necessarily the measure of the Registration Act's character. The test is whether the questioned statute's design and effect evidence a purpose to regulate rather than to punish. As the court of appeals recently instructed in *United States v. Huss*, 7 F.3d 1444, 1447–8 (9th Cir.1993):

> [A] legislature may not insulate itself from an ex post facto challenge simply by asserting that a statute's purpose is to regulate rather than punish prior conduct. The overall design and effect of the statute must bear out the non-punitive intent. *See United States v. Ward*, 448 U.S. 242, 248–49, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980).

In *Huss* an Oregon law prohibiting felons from possessing a long gun was held not to be an *ex post facto* law under the United States Constitution. Convicted for burglary under Oregon law, Huss was prohibited by statutes antedating his conviction from carrying all guns other than long guns. Huss argued that a post-conviction amendment prohibiting his possession of long guns increased his punishment, and, therefore, was an *ex post facto* law. The court found that Oregon prohibited felons from possessing long guns not as punishment, but in an effort to protect its citizens "by restricting firearms possession from those likely to engage in dangerous conduct." *Id.* at 1448. In reaching this conclusion, the *Huss* court elaborated on how to determine whether a statute is punitive in design:

> To negate any inference of a punitive design, the past conduct must be relevant to the regulated activity, and "if the past conduct ... is not the kind of conduct which indicates unfitness to participate in the activity, it will be assumed ... the purpose of the statute is to impose an additional penalty." [*Cases v. United States*, 131 F.2d 916, 921 (1st Cir.1942), *cert. denied*, 319 U.S. 770, 63 S.Ct. 1431, 87 L.Ed. 1718 (1943).] If, on the other hand, "the past conduct can reasonably be said to indicate unfitness to engage in the future activity the assumption will be otherwise."

*Id.* at 1448.

■ Plaintiffs argue that codification of many of the provisions in the Registration Act within Title 12 of the Alaska Statutes entitled "Criminal Procedure" constitutes evidence that the law is punitive in design. However, the court finds this argument suffers from a shortcoming similar to an argument relying on a legislative expression of purpose. It fails to focus on the substance of what the legislature has done. Placement of a statutory provision in a particular title may reflect nothing more than a perception that the placement will facilitate indexing. Here, whether the law in question is punitive or not, it is undeniably directly associated with certain criminal convictions, and it is perfectly logical to place most of it in Title 12. It may be added that Title 12 contains many provisions which are not punitive in character.

There is no doubt that the legislature found a link between the commission of sex crimes and the propensity to commit future crimes. It is highly unlikely that plaintiffs can successfully challenge this connection. It is clear that, on the record presently before the court, there is no reason to question the connection. The statutory design displays a purpose to regulate present circumstances, not to punish.

■ The Registration Act may, nevertheless, be considered punitive, for its effect is to impose an affirmative burden on those

subject to registration as a consequence of past conduct. Characterization of the effect of the law as punitive or regulatory is informed by considering a variety of factors identified in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). There, the Supreme Court indicated that appropriate inquiries are whether the sanction entails an affirmative disability or restraint, whether the sanction has historically been regarded as punitive, whether the sanction depends upon a finding of scienter, whether the sanction will operate to promote traditional punishment objectives, whether the sanction applies to behavior which is already a crime, whether there is an alternative non-punitive purpose for the sanction, and whether the sanction is excessive in relation to the alternative purpose. *Id.* at 168–69, 83 S.Ct. at 567–68. The Court noted that the factors may point in differing directions. *Id.*

### a. *Affirmative Disability or Restraint*

■ The Registration Act imposes an affirmative duty on sex offenders to register. As a necessary part of registration, the registrant must present himself at the nearest state trooper post or municipal police station. Thus, there is a brief restraint on the registrant's liberty which occurs while registering. However, this restraint is *de minimis* and cannot alone support a finding of affirmative disability or restraint to suggest a punitive effect. *See State v. Ward,* 123 Wash.2d 488, 869 P.2d 1062, 1069 (1994) ("We also find the physical act of registration creates no affirmative disability or restraint.")

Registration itself does not affirmatively limit plaintiffs. It does not disqualify the registrant from any activity, personal or professional. *See State v. Noble,* 171 Ariz. 171, 829 P.2d 1217, 1222 (1992) (citing *Cummings v. Missouri,* 71 U.S. (4 Wall) 277, 18 L.Ed. 356 (1866)). However, in *State v. Noble,* the Arizona Supreme Court intimated that the dissemination of information to persons other than law enforcement agencies could impose

an affirmative disability or restraint upon the registrant. *Id.* Here, the Registration Act provides for a central registry and wider dissemination of information obtained pursuant to registration than the Arizona law allowed. Thus, the Registration Act may subject registrants, including James Rowe and John Doe, to public stigma and ostracism that would affect both their personal and professional lives. In view of the provision for dissemination of information, the court finds application of the first factor indicates a punitive effect.

### b. *Historical View of Registration*

■ Plaintiffs argue that the act of registration is similar to conditions of parole or supervised release, concepts which are historically viewed as punitive. However, there are very substantial differences between the condition of one who is a registrant and one released on parole or subject to supervised release. Registration entails no obligation to accept continuing supervision, submit to searches, perform community service, live in a particular place or otherwise comply with any of the myriad and often intrusive conditions of parole or supervised release. Registration is not a concept which this court perceives to be imbued by history with a punitive connotation. *State v. Ward,* 869 P.2d at 1072; *see Lambert v. California,* 355 U.S. 225, 229, 78 S.Ct. 240, 243, 2 L.Ed.2d 228 (1957).

### c. *Scienter*

If the sanction, here registration, only comes into play upon a finding of knowing wrong-doing by the person sanctioned, that is an indication of a punitive effect. The Registration Act is premised upon the past knowingly wrongful conduct of the registrant, and this factor, therefore, would indicate the law is punitive.[21] This factor must necessarily be considered a light weight in the balance, for, if accorded substantial significance, it would dictate decisions which could not be squared with the result in cases

---

**21.** In Alaska, felony sex offenses require an awareness that the act is wrong. *State v. Guest,* 583 P.2d 836 (Alaska 1978). When an act is one so universally acknowledged to be wrong as to be *malum in se,* then scienter may be adequately

established by proof that the actor knew he acted without proving he actually knew the act was wrong. *Hentzner v. State,* 613 P.2d 821, 826 (Alaska 1980).

like *United States v. Huss, supra.* Evaluation of the third factor therefor provides some indication that the challenged law has a punitive effect.

### d. *Traditional Goals of Punishment*

The fourth factor is whether the statute promotes traditional goals of the penal law such as deterrence or retribution. The Registration Act is obviously meant to deter crime. However, the Registration Act's mechanism of deterrence may not be sufficiently similar to the ordinary mechanism of deterrence to be an indicator of punitive effect. Typically, punishments aim to deter future undesired conduct by visiting some significantly unpleasant consequence upon the criminal. The intended result is that the offender and others similarly inclined will modify future behavior to avoid the unpleasant consequence. The burdens placed directly on the perpetrator by the Registration Act are *de minimis* in this context. Rather, the only meaningful deterrence flowing *directly* from registration comes from modifying the conduct of the police and the public. Forewarned of a sex offender's presence, potential victims may take evasive action, and the police may be able to act more swiftly.

There is, however, an indirect consequence of registration which comes from the creation of a central registry intended in part to promote dissemination of information obtained in the registration process to the public. The existence of the registry and concomitant facility with which members of the public may focus attention on registrants could have a classic deterrent effect on the behavior of potential criminals, for public dissemination of information about a sex offender may elicit a strong reaction which has unpleasant consequences for the offender. The public's reaction, say plaintiffs, will result in embarrassment, harassment, ostracism, or worse. These consequences may have a deterrent effect on offenders and may visit retribution on registrants.

While the regulations implementing the central registry and any release of information to the public have not yet been adopted, it is clear that the Registration Act contem-

plates, and indeed is premised upon a finding by the legislature, that to protect the public there should be public release of the specified information.[22] Thus, it is difficult to foresee that the adoption of regulations consistent with the Registration Act could somehow eliminate public disclosure and the concomitant consequences for plaintiffs. The court concludes that the fourth factor is a strong indicator that the Registration Act has a punitive effect.

### e. *Pre-existing Crime*

The next consideration is whether the behavior to which the sanction applies is already a crime. It is. However, as with the scienter factor, this factor cannot be given great weight without essentially dictating a result contrary to established precedent, such as *United States v. Huss, supra.*

### f. *Alternative Purpose*

The next consideration identified in *Mendoza–Martinez* is whether there is an alternative purpose which may rationally be assigned to the challenged sanction. As explained in connection with the discussion of the statute's design, the registration requirement is rationally related to an entirely proper and non-punitive purpose, the protection of society from crime. This factor is one which points away from a punitive effect, for it discloses a benign, indeed laudable, effect.

### g. *Excessive in Relation to its Legitimate Non–Punitive Effect*

The last factor elucidated by the Supreme Court is whether the sanction appears excessive in relation to its legitimate non-punitive effect. Here, the act of registration and the associated burdens on the criminal are insignificant in comparison to the goal of reducing the public's exposure to serious criminal behavior. However, the same cannot be said so confidently with respect to the consequences attendant upon the public dissemination of information in the central registry which is to be created pursuant to the statute.

Defendant asserts that there are 31 other jurisdictions which have some species of sex offender registration requirement. In sever-

---

**22.** The only limit in the statute itself is that inaccurate or incomplete information is subject to challenge by the registrant. AS 18.65.087(d) as enacted by § 5 ch. 41 SLA 1994.

al states attacks have been mounted against the statutes on various grounds, including the *ex post facto* argument and violation of the prohibition on cruel and unusual punishment. In assessing either argument, the courts have analyzed the nature of the particular registration requirement presented and generally concluded that the questioned statutes were not punitive in effect. *State v. Costello,* 138 N.H. 587, 643 A.2d 531 (1994); *State v. Ward,* 123 Wash.2d 488, 869 P.2d 1062 (1994); *State v. Noble,* 171 Ariz. 171, 829 P.2d 1217 (1992); *People v. Adams,* 144 Ill.2d 381, 163 Ill.Dec. 483, 581 N.E.2d 637 (1991); *but see In Re Reed,* 33 Cal.3d 914, 191 Cal.Rptr. 658, 663 P.2d 216 (1983).

In *Ward, Noble,* and *Reed* the courts applied the *Mendoza–Martinez* factors. In *Costello* and in *Adams,* the court rested its decision on its finding of legislative intent. The absence of public disclosure of the information was a critical consideration in *Noble* and *Adams.* In *Ward,* the majority of the court interpreted the statute to limit public disclosure to cases in which the state had established the individual's probable danger to the community. In *Costello,* the information was given only to law enforcement agencies. Here, the Registration Act provides for public access to a registrant's "name, address, photograph, place of employment, date of birth, crime for which convicted, date of conviction, place and court of conviction, and length of sentence." AS 18.65.087(c), as enacted in § 5 ch. 41 SLA 1994. Thus, in none of the four jurisdictions does it appear likely that the Registration Act would be considered non-punitive. On the other hand, but for the provision requiring public dissemination of information, the Registration Act would likely withstand scrutiny when measured by the logic of the New Hampshire, Washington, Arizona, and Illinois opinions.

It is this court's conclusion that plaintiffs are likely to succeed on the merits of the claim that the Registration Act violates the prohibition on *ex post facto* legislation, because the law includes a provision providing for public dissemination of information concerning sex offenders whose convictions antedate the Registration Act.

### 3. *Violation of Plea Agreements*

■ Plaintiffs James Rowe and John Doe argue that they pled no contest to the sex offenses for which registration is now required pursuant to plea bargains that did not include any duty to register. They point out that the Registration Act itself provides that in the future a defendant who is considering a guilty plea to a sex offense must be advised of the registration duty which would follow release from incarceration. § 10 ch. 41 SLA 1994. Plaintiffs' argument that enactment of the Registration Act violates plaintiffs' plea bargains may be approached from two perspectives: breach of contract and violation of the substantive right to due process.

Plea agreements are contracts. *United States v. Keller,* 902 F.2d 1391, 1393 (9th Cir.1990). Plaintiffs are also correct in noting that plea agreements implicate constitutional concerns, and, therefore, are subject to due process principles. *United States v. Packwood,* 848 F.2d 1009, 1011 (9th Cir. 1988); *Santobello v. New York,* 404 U.S. 257, 262–63, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971). Yet, the protections are different sides of the same coin: one side cast in a mold fashioned from traditional notions of contract, the other principles of constitutional law. Here, plaintiffs complain that they have kept their end of the bargain and that the state should be compelled to perform the contract into which it entered with them.

Plaintiffs' assertion of breaches of the plea agreements is really a reformulation of the argument that the Registration Act violates constitutional proscriptions against *ex post facto* laws. The plea bargains detail agreements between the state and James Rowe and John Doe that define their punishment in exchange for not contesting guilt for the crimes charged. As stated above, the federal and state constitutional prohibitions against *ex post facto* laws prohibit a state from increasing one's punishment after a finding of guilt. It makes no difference whether guilt is established by verdict or plea bargain. It necessarily follows that if Alaska's Registration Act constitutes punishment, it not only violates the prohibitions against *ex post facto* laws, but also violates both the terms of plaintiffs' plea agreements and their right to

due process because it imposes additional punishment beyond that contractually agreed to by plaintiffs.

On the other hand, if Alaska's Registration Act is but a valid regulatory act affecting a group of people to which plaintiffs belong, the fact that their membership in that class results from their plea agreements violates neither the plea agreements, nor the Due Process Clause of the Fourteenth Amendment. In such a case, registration simply falls outside plaintiffs' contracts with the State of Alaska.[23]

In section 2 above, the court found that the Registration Act is likely penal in nature because of the provision for public dissemination of information. It follows that plaintiffs are likely to prevail on claims for violation of the plea agreements and due process for the same reason.

4. *Fourth Amendment*

■■■■ Plaintiffs assert that the Registration Act, and specifically the requirement to submit oneself to the state troopers or local police for photographs and fingerprinting, violates the Fourth Amendment to the United States Constitution which proscribes unreasonable searches and seizures. The Fourth Amendment prohibits only unreasonable searches and seizures. *United States v. Attson,* 900 F.2d 1427 (9th Cir.), *cert. denied,* 498 U.S. 961, 111 S.Ct. 393, 112 L.Ed.2d 403 (1990). A search, for Fourth Amendment purposes, involves governmental infringement on a person's expectation of privacy. *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). If the Fourth Amendment affords constitutional protection here, plaintiffs must possess both a subjective expectation of privacy in their likeness and fingerprints, and there must be an objective expectation of privacy measured from society's vantage. *United*

*States v. George,* 987 F.2d 1428, 1432 (9th Cir.1993).

■■■■ The Registration Act would compel plaintiffs James Rowe and John Doe to submit to photographing and fingerprinting at either the state troopers' office or the nearest local police station. Generally, one does not have a reasonable expectation of privacy as to his physical characteristics, including one's likeness. *See United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973). The Supreme Court has long held that the Fourth Amendment does not protect what "a person knowingly exposes to the public." *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). Courts have consistently refused to accord Fourth Amendment protection to non-testimonial evidence such as photographs of a person, his or her handwriting, and fingerprints. *Dionisio,* 410 U.S. at 5–7, 93 S.Ct. at 767–68. Thus, the photographs and fingerprinting, alone, would not likely constitute a search for purposes of the Fourth Amendment.

The Fourth Amendment also protects persons from unreasonable seizures by the state, even absent a search. *Id.* at 8–9, 93 S.Ct. at 769. For purposes of the Fourth Amendment, seizures involve some element of involuntary detainment, however brief. *State of Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). While arrest is clearly a seizure, so is an investigatory stop for the purpose of fingerprinting. *Hayes v. Florida,* 470 U.S. 811, 815–817, 105 S.Ct. 1643, 1646–47, 84 L.Ed.2d 705 (1985). Alaska's Registration Act requires plaintiffs to go to the Alaska state trooper post or municipal police department nearest to where each resides, and to submit to fingerprinting and having a photograph taken. The court concludes that plaintiffs are likely to establish that the involuntary surrender to the state for fingerprinting and

---

**23.** The Supreme Court of Washington recently concluded that Washington's sex offender registration law did not violate the plea bargain/due process rights of one convicted of a sex offense before the registration law was enacted. *State v. Ward,* 123 Wash.2d 488, 869 P.2d 1062 (1994). The Washington Supreme Court reached its decision based upon the conclusion that registration was a collateral consequence of the conviction for sex offenses. While this appears to be largely the same analysis, the court believes that it is better to explain that if the Registration Act is not defined to constitute punishment, it does not implicate plaintiffs' plea agreement or due process rights.

photographing is a seizure under the Fourth Amendment. *Id.; Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969).

██ A seizure violates the Fourth Amendment only if it is unreasonable. *Florida v. Jimeno,* 500 U.S. 248, 250, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991). Traditionally, the Fourth Amendment has required the government predicate any seizure or detention upon probable cause, or, at a minimum, some lesser quantum of individualized suspicion dependent upon the nature of the detention. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (reasonable suspicion required to conduct investigative stop).

Plaintiffs rely on the Supreme Court's decision in *Hayes v. Florida,* 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985) to require establishment of an individualized suspicion before compelling appearance for fingerprinting and photographing. In *Hayes,* the police had interviewed Hayes, along with a host of others, as part of an investigation of a rape. The police decided to visit Hayes' home to attempt to obtain fingerprints from Hayes to compare with those found at the crime scene. When confronted at his home, Hayes voiced reluctance to voluntarily permit fingerprinting, but allegedly reconsidered upon being informed that if he did not volunteer he would be arrested. Hayes was then fingerprinted and placed under formal arrest when the comparison matched those taken at the crime scene. The Court stated:

> [O]ur view continues to be that the line is crossed when the police, without probable cause or a warrant, forcibly remove a person from his home or other place in which he is entitled to be and transport him to the police station, where he is detained, although briefly, for investigative purposes. We adhere to the view that such seizures, at least where not under judicial supervision, are sufficiently like arrest to invoke the traditional rule that arrests may constitutionally be made only on probable cause.

*Id.* at 817, 105 S.Ct. at 1647.

Though *Hayes* states the general rule under the Fourth Amendment, the Supreme Court has since made clear that in certain limited instances where a minor intrusion serves a significant societal interest, the reasonableness of the intrusion may be established even absent an individualized suspicion. The Court has limited such searches to those instances of "special governmental needs, beyond the normal need for law enforcement, ... [where] it is impractical to require a warrant or some level of individualized suspicion in the particular context." *National Treasury Employees v. Von Raab,* 489 U.S. 656, 665–66, 109 S.Ct. 1384, 1390–91, 103 L.Ed.2d 685 (1989). The departure from a showing of any individualized suspicion may be justified only in those "limited circumstances where the privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion...." *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 624, 109 S.Ct. 1402, 1417, 103 L.Ed.2d 639 (1989).

In *Michigan Dept. of State Police v. Sitz,* 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990), the Supreme Court considered the Fourth Amendment implications of Michigan's use of sobriety checkpoints. Neither party contested that the initial stop at the checkpoint constituted a "seizure" under the Fourth Amendment without any individualized suspicion. The Court applied the tripartite balancing test set forth in *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979) to determine the reasonableness of the seizure. Under *Brown,* a court must balance the state's interest and the effectiveness of the intrusion against the intrusion upon the individual's privacy. *Id.* at 50–51, 99 S.Ct. at 2640.

In *Sitz,* it was also undisputed that society held a valid and significant interest in stopping drunk driving. Against this interest, the Court weighed the scope of the seizure, and concluded that the intrusion was, objectively, minimal. *Sitz,* 496 U.S. at 452, 110 S.Ct. at 2486. The Court discounted the subjective intrusion. It reasoned that subjective intrusion must be measured from the vantage of the law abiding citizen rather than the driver who had been drinking and feared

discovery. *Id.* Finally, the court examined the "degree to which the seizure advances the public interest." [24] *Id.* at 453, 110 S.Ct. at 2487 (quoting *Brown v. Texas*, 443 U.S. at 51, 99 S.Ct. at 2640). Using empirical evidence, the state proved that approximately 1 percent of those stopped were arrested for drunk driving. The Court concluded that that figure was sufficient to establish the effectiveness of the intrusion.

The instant case is analogous to *Sitz* in several important respects. [25] Foremost is the gravity of society's interest. There can be no question that prevention of, and apprehension of, those who commit sex offenses is a concern of the highest priority. Second, as in *Sitz*, the objective intrusion appears minimal, although the court is unable to fully evaluate the objective intrusion occasioned by the Registration Act until regulations implementing the law are adopted. However, any regulations to be adopted are necessarily bounded by ch. 41 SLA 1994 which only requires an appearance for the purposes of fingerprinting and photographing, something that in virtually all instances would have taken place when the person was first arrested or incarcerated and so may prove unnecessary. [26] Though any new fingerprinting and photographing which the regulations might require will likely be performed by the police, there is no provision granting the police discretion to further detain or question an individual. It also appears that within the time frame prescribed by statute, the individual may choose the time when he submits himself for fingerprinting and photographing.

The potential for subjective intrusion should be measured from the standpoint of the earlier convicted, but presently law abiding, registrant. *See Sitz*, 496 U.S. at 452, 110 S.Ct. at 2486. The appearance for fingerprinting and photographing is a reminder of the past offense, but does not significantly increase the subjective discomfort occasioned by the act of registration itself. The requirement to submit to fingerprinting and photographing is prophylactic in nature, and the law abiding former offender should recognize that official possession of the photograph and fingerprints is an incentive to remain law abiding. For the most part, any embarrassment or fear is not generated from the requirement to submit to the fingerprinting and photographing, but from the underlying fact of registration and the original offense. The fact that within certain time parameters set by statute, the individual may determine when he shall present himself to the authorities affords the registrant an opportunity to minimize embarrassment and inconvenience.

It is difficult to determine how effective the seizure occasioned by the Registration Act will be in advancing the public interest it is designed to serve. As in *Sitz*, defendants present empirical evidence in support of their defense. [27] Here, defendants allege that

---

24. The Court rejected an analysis of the effectiveness of the seizure.

25. A different level of analysis is required if those to be compelled to provide fingerprints and photographs are on probation or parole. Such individuals remain under the supervision of the State of Alaska and possess a lesser interest in their privacy. *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). The State of Alaska routinely requires parolees to agree to reasonable searches and seizures by a parole officer or peace officer acting under the supervision of a parole officer without establishing individualized suspicion. AS 33.16.150(b)(3), formerly AS 33.16.150(b)(9). The Supreme Court has stated that the state's interest in supervising parolees and protecting the public justify such warrantless searches and seizures. *Id.* at 880, 107 S.Ct. at 3164. It appears that one plaintiff is currently on parole. Though his conditions do not specifically require him to submit for fingerprinting and photographing, they do require him, as general and special conditions of parole, to submit himself for searches. Arguably, this alone is sufficient to establish the reasonableness of the fingerprinting and photographing under the Fourth Amendment. However, it is not clear from the record whether both James Rowe and John Doe are still serving probation.

26. Presumably, the authorities have access to both fingerprints and photographs of Alaskan felons and felons also migrate to Alaska. This is an area which cannot be adequately addressed on the present state of the record.

27. Defendants cite a number of statistics and studies in their opposition memorandum. They fail to identify the studies, provide copies of the studies, or any expert's affidavit to support the proposition that the cited studies are reliable. Plaintiffs submit their own studies performed largely by the United States Department of Justice, but also fail to provide any expert's affidavit to support their reliability.

studies show those convicted of serious sex offenses are more likely to repeat than the average felon. Even assuming this is true, this fact sheds little light on the effectiveness of registration. Part of the Registration Act's purpose is to deter future sex offenses, yet there is nothing in the record that would establish how many offenses are deterred by registration.

On balance, it appears on the basis of the record now available that plaintiffs are not likely to prevail on their Fourth Amendment arguments. However, it is not necessary for plaintiffs to establish probable success or that they have raised serious questions on more than one of the grounds they have advanced in order to qualify for injunctive relief.

### 5. *Right to Privacy*

■ Plaintiffs also challenge Alaska's Registration Act under the implied federal right to privacy, and the express Alaska right to privacy found in Article I, § 22 of the Alaska Constitution. The right to privacy under the United States Constitution is well recognized, though ill-defined. *National Treasury Employees Union v. United States Dept. of the Treasury*, 25 F.3d 237 (5th Cir. 1994). The right may generally be broken into two components. The first protects the "individual interest in avoiding disclosure of personal matters." *Id.* at 242; *see Doe v. City of New York*, 15 F.3d 264, 266 (2d Cir.1994) (individuals with HIV virus possess right of privacy regarding their condition). The second component shields a person's right to make important intimate decisions, such as using contraceptives or to have an abortion, unfettered from governmental regulation. *National Treasury Employees Union*, 25 F.3d at 242–43 n. 1 (citing *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973)). Both components require that the individual asserting the right of privacy possess a reasonable expectation of privacy. *Id.* In this regard, analysis of plaintiffs' claims that compliance with the Registration Act will violate their rights of privacy has largely been accomplished through analysis of subjective and objective expectations of privacy performed under the Fourth Amendment in § 4, *supra.*

■ Though the contours of the federal right to privacy may be amorphous, it is clear that the right does not attach to matters already within the public domain. *Doe v. City of New York*, 15 F.3d 264 at 268, (citing *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975)). As previously discussed, the Supreme Court has recognized that one does not have an objectively reasonable expectation of privacy in one's likeness or fingerprints under the Fourth Amendment. Similarly, plaintiffs' residences, job locations, drivers license number, date of convictions, and nature of the convictions are also generally considered public information, as is Jane Rowe's marriage to James Rowe. Such information does not reveal intimate facts traditionally protected from disclosure by the federal right to privacy. The public nature of these facts is likely to prove fatal to plaintiffs' claims for violation of their rights to privacy under the federal constitution. Plaintiffs do not appear to be able to establish a reasonable expectation of privacy in the information required to be disclosed by the Registration Act.

■ Plaintiffs also challenge the Registration Act under Article I, § 22 of the Alaska Constitution. Plaintiffs contend that this court may exercise pendent jurisdiction to pass on the constitutionality of the Registration Act under the Alaska Constitution. The court agrees with defendants that *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) precludes consideration of plaintiffs' claims for violation of the right to privacy under state law. There, the Supreme Court made clear that relief against a state, or its officials, in federal court is restricted to prospective injunctive relief for violation of federal rights. Thus, the Eleventh Amendment does not permit one to sue the state, or its officials, in federal court for a prospective violation of state law rather than federal law. Though pendent jurisdiction will permit a federal court to consider a private party's state law claims incident to federal claims, it cannot override the dictates of the Eleventh Amendment to permit one to sue a state in

federal court. *Id.* at 121, 104 S.Ct. 919 ("neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment.")

#### C. *Balance of Hardship.*

■ The actual act of registration imposes minimal hardship on plaintiffs. Registration will place information about James Rowe and John Doe in a central registry readily identifying them as sex offenders, and providing the public with a convenient source for acquiring additional information, including their addresses and places of employment. This aspect of registration does place a significant burden on plaintiffs. On the other hand, if this court enjoins the entire registration scheme, it precludes convenient access by both police and public to data that may be very useful in reducing serious crimes. It is this court's finding that the balance of hardships tips in favor of plaintiffs only so long as there is to be public dissemination of registration information.

#### D. *Scope of Preliminary Injunction.*

■ Plaintiffs have established a likelihood of successfully challenging the constitutionality of the Registration Act as a violation of the prohibition against *ex post facto* laws. The only constitutional infirmity plaintiffs are likely to prove is that creation of a central registry providing for the dissemination of information to the general public is impermissible. Such an outcome may not be fatal to the statute as a whole. Alaska provides for the severance of any statutory provision that renders a law unconstitutional.[28] If AS 18.65.087(b), as enacted by § 5 ch. 41 SLA 1994, is severed from the remainder of the act, plaintiffs are not likely to succeed on the merits. Moreover, without public dissemination of information, the balance of hardship does not tip in favor of plaintiffs. According-

ly, the court will not enjoin the defendants from enforcing the registration requirements of the Registration Act on August 10, 1994, but does hereby enjoin defendants from making any dissemination of any information gathered concerning James Rowe and John Doe outside law enforcement agencies pending resolution of this action.

### II. *MOTION TO PROCEED UNDER PSEUDONYMS*

■ Plaintiffs also seek to prosecute this action under fictitious names for fear of harassment and ostracism that they contend will result if required to disclose their identities. Generally, a person is required to disclose one's identity to commence a lawsuit. The Federal Rules of Civil Procedure require that a party initiate a lawsuit by filing a complaint. Fed.R.Civ.P. 3. Rule 10(a) requires that the complaint state the title of the action, which "shall include the names of all the parties." Fed.R.Civ.P. 10(a). Though the Federal Rules of Civil Procedure do not expressly prohibit use of pseudonyms for purposes of litigation, it is well recognized in American jurisprudence that "lawsuits are public events and the public has a legitimate interest in knowing the facts involved in them. Among those facts is the identity of the parties." *Doe v. Deschamps,* 64 F.R.D. 652, 653 (D.Mont.1974). This requirement rests upon the guiding historical practice that judicial proceedings are open to the public. *See generally,* Steinman, "Public Trial, Pseudonymous Parties: When Should Litigants be Permitted to Keep Their Identities Confidential," 37 Hastings L.R. 1 (1985). Courts, however, have increasingly recognized an exception to this requirement in limited "matters of a sensitive and highly personal nature." *Doe v. Deschamps,* 64 F.R.D. at 653; *see also Southern Methodist*

---

**28.** AS 01.10.030 provides:
   **Constitutionality and severability.** Any law heretofore or hereafter enacted by the Alaska legislature which lacks a severability clause shall be construed as though it contained the clause in the following language, "If any provision of this Act, or the application thereof to any person or circumstance is held invalid, the remainder of this Act shall not be affected thereby.

In this case, it may be that the public dissemination of information is so central to the entire statute that severability would be inappropriate, but that is sufficiently doubtful to render it inappropriate to broaden the scope of the injunction on the theory that AS 01.10.030 does not apply to the Registration Act.

*Univ. Ass'n of Women Law Students v. Wynne & Jaffe,* 599 F.2d 707 (5th Cir.1979). Plaintiffs have been allowed to proceed anonymously in matters involving abortion,[29] birth control,[30] welfare cases involving illegitimate children,[31] and homosexuality[32]. Such situations share a need to shelter the anonymous plaintiff from "social stigmatization, real danger of physical harm, or where the injury litigated against would occur as a result of the disclosure of the plaintiff's identity." *Doe v. Hallock,* 119 F.R.D. 640, 644 (S.D.Miss.1987).

The interests protected by maintaining public access to judicial proceedings, though not easily defined, are not to be underestimated. Generally, open access to judicial proceedings "has been thought to enhance the integrity and quality of what takes place." *Richmond Newspapers Inc. v. Virginia,* 448 U.S. 555, 578, 100 S.Ct. 2814, 2828, 65 L.Ed.2d 973 (1980) (plurality opinion) (footnote omitted). These interests are rendered meaningless if discarded when controversial issues are raised by litigation. For this reason, courts are reluctant to grant a litigant a "cloak of anonymity." *United States v. Doe,* 655 F.2d 920, 922, n. 1 (9th Cir.1981); *Doe v. Rostker,* 89 F.R.D. 158, 162 (N.D.Cal.1981) ("There must be a strong social interest in concealing the identity of the plaintiff.") Courts have refused requests to proceed anonymously in actions involving economic matters,[33] challenges to selective service registration,[34] sexual harassment under Title VII,[35] termination of employment due to alcoholism,[36] and AIDS[37].

Neither the Supreme Court, nor the Ninth Circuit, has provided much instruction on this issue, though both have permitted prosecution of suits under pseudonyms. *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (plaintiff challenged state's regulation of abortion); *United States v. Doe,* 655 F.2d at 922, n. 1 (plaintiff was prison informant threatened with bodily injury).

In *Doe v. Frank,* 951 F.2d 320 (11th Cir. 1992), the plaintiff sought to proceed under a fictitious name to avoid social stigma that he argued would attach upon revelation of his alcoholism. The plaintiff sought to challenge his termination from the Postal Service on the grounds that his alcoholism constituted a physical handicap under the Rehabilitation Act of 1973, 29 U.S.C. § 791–794. The court concluded that a plaintiff may proceed anonymously in "exceptional cases," where he "has a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *Id.* (citing *Doe v. Stegall,* 653 F.2d 180, 186 (5th Cir.1981)). The court identified three circumstances common to those cases where a plaintiff was permitted to proceed under a fictitious name:

1. plaintiffs challenged governmental activity;

2. plaintiffs were required to disclose information of the utmost intimacy; and

3. plaintiffs were compelled to admit their intention to engage in illegal conduct, thereby risking criminal prosecution.

*Id.*

Plaintiffs do challenge governmental action. That alone is not controlling. *See Doe v. Frank,* 951 F.2d at 323–24.

---

**29.** *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Doe v. Deschamps,* 64 F.R.D. 652 (D.Mont.1974).

**30.** *Poe v. Ullman,* 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961).

**31.** *Doe v. Carleson,* 356 F.Supp. 753 (N.D.Cal. 1973).

**32.** *Webster v. Doe,* 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988); *Doe v. United Serv. Life Ins. Co.,* 123 F.R.D. 437 (S.D.N.Y.1988); *Doe v. Chafee,* 355 F.Supp. 112 (N.D.Cal.1973).

**33.** *Doe v. Deschamps,* 64 F.R.D. 652 (D.Mont. 1974).

**34.** *Doe v. Rostker,* 89 F.R.D. 158 (N.D.Cal.1981).

**35.** *Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe,* 599 F.2d 707 (5th Cir.1979); *Doe v. Hallock,* 119 F.R.D. 640 (S.D.Miss.1987).

**36.** *Doe v. Frank,* 951 F.2d 320 (11th Cir.1992).

**37.** *Doe v. Prudential Ins. Co. of America,* 744 F.Supp. 40 (D.R.I.1990).

Courts uniformly recognize that "[d]ivulging personal information of the utmost intimacy or having to admit an intent to engage in prohibited conduct are proper factors to consider when a plaintiff requests anonymity." *Id.* In this instance, for the reasons discussed in Part B, *supra*, the information to be disclosed, names and addresses, are not of the utmost privacy. Rather, it is their pleas concerning sex offenses that plaintiffs wish to keep private. However, the information is already public.[38] Additionally, as late as spring of this year plaintiff James Rowe openly pursued early termination of parole for his sex offense. In 1992 plaintiff John Doe filed an affidavit in his own name supporting James Rowe's application for early termination of parole that admitted his own treatment for sex offenses.

The public nature of James Rowe's and John Doe's actions is fatal to their claims that anonymity is required to shield them from stigma that may arise from their attack upon Alaska's sex offender registration law. Any stigma that may attach comes not from the challenge to the Registration Act, but from the underlying sex offense. Though plaintiffs' suit may bring unwanted attention, it is not an invasion of any private matter at all, much less one of the utmost intimacy. The thing that plaintiffs would shield is already in the public domain.

The court would be inclined to look more favorably upon the request for relief from Rule 10(a) if plaintiffs had presented facts from which it could be more reasonably concluded that plaintiffs face a serious risk of bodily harm. *Compare United States v. Doe*, 655 F.2d 920 (9th Cir.1981) (imprisoned government informant at risk of bodily harm if name revealed). Here, the persons most directly affected by, or interested in, defendants' sex crimes have likely had actual knowledge of their identities, at least since the prosecutions were commenced. The court is simply not convinced that the local community in general will turn violently upon plaintiffs if their names appear afresh in connection with sex crimes committed years ago. It may be added that while the sex offenses by Rowe and Doe are deplorable,

they are not of an unusual or highly inflammatory nature. Moreover, as plaintiff Rowe has explained in an affidavit, the people who presently hire his professional services are all aware of his status.

■ Plaintiff Jane Rowe is not convicted of any crime, and, therefore, is dissimilarly situated from the other plaintiffs. She is married to James Rowe and fears she may be stigmatized if her husband is required to disclose his true identity. However, Ms. Rowe's marriage is a matter of public record. There is no fact that is not already known to the public which would be protected by providing her with an exception to Rule 10(a).

The third circumstance identified in *Doe v. Frank* is the compelled admission of intention to engage in illegal conduct. Here, plaintiffs have not, and need not, announce an intention to act illegally in order to bring their challenge.

■ Plaintiffs argue that by disclosing their names, they sustain the injury they seek to avoid by this litigation. Such an argument has been recognized as a valid reason to permit plaintiffs to proceed anonymously. *Roe v. Ingraham*, 364 F.Supp. 536, 541 n. 7 (S.D.N.Y.1973) (challenge to registration of prescribed use of controlled substances). In *Doe v. Rostker*, 89 F.R.D. 158, 161–62 (N.D.Cal.1981), the court rejected a request to proceed anonymously to challenge selective service registration. The court recognized that a plaintiff may properly be allowed to proceed under a pseudonym if disclosure of his identity would vitiate the purpose of the lawsuit. But, the court concluded that unlike *Ingraham*, no social stigma would attach to plaintiffs if required to prosecute their case in their own names. Moreover, the harm of which plaintiffs complained, having their names linked to an allegedly illegally administered draft registration, was simply insufficient to overcome the strong public policies implicated in disclosing the parties' true identities. *Id.* at 162.

Unlike the plaintiffs in *Ingraham*, who sought to keep the private fact of their use of controlled substances out of public knowl-

---

38. Plaintiffs James Rowe and John Doe concede that their pleas are a matter of public record.

**1388**

edge, plaintiffs here seek to limit dissemination of a fact already public: that James Rowe and John Doe have each pled no contest to a sex offense. As noted above, there simply is no disclosure of an intensely *private* fact, because the information is already within the public domain. Moreover, disclosure of plaintiffs' identities will not vitiate the purpose of this litigation. The Registration Act imposes a continuing obligation to register annually for a minimum of fifteen years. Thus, plaintiffs have a reason to maintain this action apart from preventing the present disclosure of their true identities. Moreover, attaching their names to the instant lawsuit may bring plaintiffs some transitory notoriety in the media, but it will not result in placement of their names in a central registry together with other personal information which is thus conveniently bundled and always readily available to anybody who cares to look.

The present action does not warrant anonymity. Disclosure is the rule, only to be waived in exceptional circumstances. Plaintiffs have not demonstrated exceptional circumstances that justify proceedings under pseudonyms. **IT IS THEREFORE ORDERED THAT:**

Plaintiffs' Motion for Preliminary Injunction (Docket No. 3.) is **DENIED IN PART AND GRANTED IN PART** as follows: Plaintiffs James Rowe and John Doe must register under ch. 41 SLA 1994, provided, however, that defendants shall not disseminate the information concerning James Rowe and John Doe received pursuant to registration to the public pending further order of this court. Plaintiffs' Motion for Leave to File Under Pseudonym and Motion for Protective Order (Docket No. 2) is **DENIED.** Plaintiffs shall amend their complaint to bring their claims in their own names on or before August 10, 1994. Failure to timely file an amended complaint identifying plaintiffs shall result in the dismissal of this action without prejudice and the dissolution of the restraint on defendants' conduct.