John DOE, a pseudonym, Appellant,

v.

STATE of Alaska, Appellee.

No. S–12150.

Supreme Court of Alaska.

July 25, 2008.

Darryl L. Thompson, Darryl L. Thompson, P.C., Anchorage, for Appellant.

Diane L. Wendlandt, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and David W. Márquez, Attorney General, Juneau, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, and EASTAUGH, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

The Alaska statute known as the Alaska Sex Offender Registration Act (ASORA) requires persons convicted of sex offenses to register and periodically re-register with the Alaska Department of Corrections, the Alaska State Troopers, or local police, and disclose detailed personal information, some of which is not otherwise public. Most of the disclosed information is publicly disseminated and is published by the state on the internet.[1] Does applying ASORA to "John Doe," who committed his crime and was convicted and sentenced before ASORA was enacted, violate the ex post facto clause of the Alaska Constitution? We conclude that it does because ASORA imposes burdens that have the effect of adding punishment beyond what could be imposed when the crime was committed. We therefore hold that ASORA's registration requirement does not apply to persons who committed their crimes before ASORA became effective, and reverse the superior court order granting final judgment in favor of the state and against Doe.

1. Although ASORA imposes registration, re-registration, and disclosure obligations and provides for public dissemination of public and private information, we sometimes refer to these provisions collectively as requiring "registration," unless context requires greater specificity.

2. "John Doe" is a pseudonym.

3. Chapter 41 of the 1994 session laws contains provisions codified in Title 11, chapter 56; Title 12, chapters 55 and 63; Title 18, chapter 65; Title 28, chapter 5; and Title 33, chapter 30. Following amendment in 1999, ASORA defines "sex offender" as follows: " 'sex offender or child kidnapper' means a person convicted of a sex offense or child kidnapping in this state or another jurisdiction regardless of whether the conviction occurred before, after, or on January 1, 1999." Ch. 54, § 18, SLA 1999; AS 12.63.100(5).

ASORA defines "sex offense" as follows:
(6) "sex offense" means
 (A) a crime under AS 11.41.100(a)(3), or a similar law of another jurisdiction, in which the person committed or attempted to commit a sexual offense, or a similar offense under the laws of the other jurisdiction; in this subparagraph, "sexual offense" has the meaning given in AS 11.41.100(a)(3);

## II. FACTS AND PROCEEDINGS

"John Doe" was charged in 1985 with three counts of first-degree sexual abuse of a minor for molesting one of his daughters.[2] Doe pleaded no contest to one count of first-degree sexual abuse of a minor, an unclassified felony, and to one count of second-degree sexual abuse of a minor, a class B felony. The superior court accepted his plea and sentenced him to twelve years of imprisonment with four suspended. Doe began serving his sentence in August 1985.

In December 1990 Doe completed serving the unsuspended portion of his sentence less a good-time reduction required by AS 33.20.010(a) and was released to mandatory parole and supervised probation. In September 1991 the Parole Board released Doe from mandatory parole nearly two years early, based on its determination that Doe had participated in rehabilitative counseling and posed little or no threat to the public. In 1995 Doe completed his period of probation.

In May 1994 the Alaska Legislature enacted the statute known as the Alaska Sex Offender Registration Act (ASORA).[3] It be-

(B) a crime under AS 11.41.110(a)(3), or a similar law of another jurisdiction, in which the person committed or attempted to commit one of the following crimes, or a similar law of another jurisdiction:
 (i) sexual assault in the first degree;
 (ii) sexual assault in the second degree;
 (iii) sexual abuse of a minor in the first degree; or
 (iv) sexual abuse of a minor in the second degree;
(C) a crime, or an attempt, solicitation, or conspiracy to commit a crime, under the following statutes or a similar law of another jurisdiction:
 (i) AS 11.41.410–11.41.438;
 (ii) AS 11.41.440(a)(2);
 (iii) AS 11.41.450–11.41.458;
 (iv) AS 11.41.460 if the indecent exposure is before a person under 16 years of age and the offender has a previous conviction for that offense;
 (v) AS 11.61.125–11.61.127;
 (vi) AS 11.66.110 or 11.66.130(a)(2) if the person who was induced or caused to engage in prostitution was 16 or 17 years of age at the time of the offense; or
 (vii) former AS 11.15.120, former 11.15.134, or assault with the intent to commit rape under former AS 11.15.160, former AS 11.40.110, or former 11.40.200....

came effective August 10, 1994,[4] after Doe was convicted, sentenced, and released from prison, but before he completed his probation. ASORA requires sex offenders to register with the Alaska Department of Corrections, the Alaska State Troopers, or local police.[5] It requires registrants to disclose their names, addresses, places of employment, date of birth, information about their conviction, all aliases used, driver's license numbers, information about the vehicles they have access to, any identifying physical features, anticipated address changes, and information about any psychological treatment received.[6] It authorizes registrants to be photographed and fingerprinted.[7] Registrants must periodically re-register and update their disclosures: those convicted of aggravated crimes must re-register quarterly; those not convicted of aggravated crimes must re-register annually.[8] A sex offender who changes residences must give notice to the state trooper office or municipal police department closest to his new residence within one working day.[9]

ASORA requires the Alaska Department of Public Safety to maintain a central registry of sex offenders that contains the information obtained under ASORA.[10] ASORA authorizes public access to offenders' names, aliases, dates of birth, addresses, photographs, physical descriptions, motor vehicle information, places of employment, and public information about their convictions and sentences.[11] Public access to the information includes a statement as to whether the offender is in compliance with AS 12.63 or cannot be located.[12] The Department of Public Safety provides public access to the information by posting it on the internet.[13] A photograph of each registrant appears on a webpage under the caption "Registered Sex Offender/Child Kidnapper."[14] Each registrant's page also displays the registrant's physical description, home address, employer, work address, and conviction information.[15]

---

AS 12.63.100(6).

4. Ch. 41, SLA 1994.

5. AS 12.63.010(b).

6. AS 12.63.010(b)(1). After we heard oral argument the legislature enacted Senate Bill 185, amending various sections of ASORA, effective January 1, 2009. Ch. 42, SLA 2008. Beginning January 1, 2009, all registrants, regardless of conviction date, must also disclose their e-mail addresses, instant messaging addresses, and other internet communication identifiers. Ch. 42, §§ 3, 6, SLA 2008.

7. AS 12.63.010(b)(2).

8. AS 12.63.010(d), .020(a)(1), (2).

9. AS 12.63.010(c). Effective January 1, 2009, a registrant must also notify the department within one working day of establishing or changing an e-mail address, instant messaging address, or internet communication identifier. Ch. 42, § 4, SLA 2008.

10. *See* AS 18.65.087(a).

11. *See* AS 18.65.087(b). The implementing regulations state in pertinent part:

The department will provide information in the central registry that is subject to public disclosure under AS 18.65.087 for any purpose, to any person, without charge, by posting or oth-

erwise making it available for public viewing in printed or electronic form.
13 Alaska Administrative Code (AAC) 09.050(a) (2004).

12. AS 18.65.087(b).

13. AS 18.65.087(h) provides in pertinent part:

The Department of Public Safety shall provide on the Internet website that the department maintains for the central registry of sex offenders and child kidnappers information as to how members of the public using the website may access or compile the information relating to sex offenders or child kidnappers for a particular geographic area on a map.
*See* Alaska Department of Public Safety, *Sex Offender Registration/Child Kidnapper Central Registry,* http://www.dps.state.ak.us/sorweb/sorweb.aspx (last visited July 21, 2008). Effective January 1, 2009, "the department may provide a method for, or may participate in a federal program that allows, the public to submit an electronic or messaging address or Internet identifier and receive a confirmation of whether the address or identifier has been registered by a registered sex offender or child kidnapper." Ch. 42, § 5, SLA 2008.

14. *See* Alaska Department of Public Safety, *Sex Offender Registration/Child Kidnapper Central Registry,* http://www.dps.state.ak.us/sorweb/sorweb.aspx (follow "view all entries" hyperlink) (last visited July 21, 2008).

15. *See id.*

ASORA's provisions require Doe to register and re-register every three months for the rest of his life.[16] But his information has never been publicly released on the state's website. In 1994 Doe (using the pseudonym Rowe) sued state officials in the United States District Court for the District of Alaska challenging ASORA on the grounds it violates the federal prohibition against ex post facto laws, the Fourth Amendment prohibition against unreasonable searches and seizures, his plea bargain contract, and his right to privacy.[17] The federal court concluded that Doe established a likelihood of success on his ex post facto and plea agreement violation claims, and found that the balance of hardships tipped in favor of Doe to the extent his registration information would be publicly disseminated.[18] It therefore granted a preliminary injunction requiring Doe to register under the act, but prohibiting the state from publicly disclosing the registration information.[19] In 1998 the parties filed cross-motions for summary judgment and the district court granted the state's motion.[20]

On appeal, the United States Court of Appeals for the Ninth Circuit reversed the state's summary judgment and held that ASORA is an ex post facto law as applied to Doe.[21] The Alaska Public Safety Commissioner petitioned for certiorari and the United States Supreme Court reversed the Ninth Circuit's decision after concluding that the statute did not violate the federal ex post facto clause.[22] The Court remanded the case to the Ninth Circuit.[23] On remand, the Ninth Circuit rejected Doe's other federal substantive and procedural due process

claims.[24] The federal courts did not rule on Doe's state law claims.

In January 2005 Doe sued the state in the superior court, seeking a judgment declaring that ASORA denies him due process in violation of the Alaska Constitution. Doe also requested a temporary restraining order and preliminary and permanent injunctions to prevent the state from requiring him to publicly register. The state opposed Doe's motion for injunctive relief. In August 2005 the superior court denied Doe's motion. It determined that Doe had established the potential for irreparable harm, but had not established a likelihood of success on the merits. It concluded that Doe had not shown that ASORA's registration requirement violated any fundamental right or liberty interest and that requiring Doe to publicly register therefore would not violate his substantive or procedural due process rights.

Anticipating an appeal to this court, the superior court entered a temporary stay under Alaska Civil Rule 62 prohibiting the state from publishing or disseminating Doe's information. The parties agreed no further superior court proceedings were necessary to resolve Doe's claims and stipulated to entry of final judgment. In November 2005 the superior court entered final judgment for the state and against Doe.

Doe appeals.

## III. DISCUSSION

### A. Standard of Review

 We give de novo review to questions of law, including issues of statutory

**16.** AS 12.63.010(d)(2).

**17.** *See Rowe v. Burton*, 884 F.Supp. 1372, 1375 (D.Alaska 1994). This procedural history is described in *Doe I v. Otte*, 259 F.3d 979, 983 (9th Cir.2001), *rev'd sub nom. Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003).

**18.** *Rowe*, 884 F.Supp. at 1380, 1384.

**19.** *Id.* at 1388.

**20.** *Otte*, 259 F.3d at 983, *rev'd sub nom. Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003).

**21.** *Id.* at 995.

**22.** *Smith v. Doe*, 538 U.S. 84, 105–06, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003).

**23.** *Id.* at 106, 123 S.Ct. 1140.

**24.** *Doe v. Tandeske*, 361 F.3d 594, 596–97 (9th Cir.2004), *cert. denied*, 543 U.S. 817, 125 S.Ct. 56, 160 L.Ed.2d 25 (2004).

interpretation.[25] In ruling on questions of law, we "adopt the rule which is most persuasive in light of precedent, reason, and policy." [26] We apply our independent judgment in determining whether a statute violates the Alaska Constitution.[27]

## B. The Ex Post Facto Clause

### 1. The parties' contentions

Doe's opening brief argues that compliance with ASORA would impose "harmful and onerous new consequences," violating his right to due process. Because we determined that the essence of his argument is an ex post facto claim, we asked the parties to submit supplemental briefs addressing whether as applied to Doe ASORA violates Alaska's prohibition against ex post facto laws.

Article I, section 15 of the Alaska Constitution, like article I, section 9 of the United States Constitution, provides that "[n]o ... ex post facto law shall be passed." An ex post facto law is a law "passed after the occurrence of a fact or commission of an act, which retrospectively changes the legal consequences or relations of such fact or deed." [28] These constitutional prohibitions bar the legislature from enacting any law that "punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission; or which deprives one charged with a crime of any defense available according to law at the time when the act was committed." [29] But "[t]he mere fact that [a statute] alters a convicted felon's circumstances to his or her disadvantage does not in itself invalidate the statute as ex post facto." [30] In short, the prohibition applies only to penal statutes; the critical question is therefore whether ASORA imposes additional punishment on individuals, like Doe, who committed their crimes before ASORA became effective. Federal courts use a two-part test to determine whether a statute imposes punishment.[31] This is the test we will describe in Part III.B.3 and apply in Part III.C. We will refer to this test as the "intent-effects" test or the "multifactor effects" test.

Doe argues that because it "substantially alters" the consequences attached to the completed crime, ASORA satisfies Alaska's ex post facto clause only if ASORA is applied prospectively, to persons who committed their crimes after August 10, 1994, when ASORA took effect.[32]

Doe advances two main arguments in support. First, recognizing that the United States Supreme Court held in *Smith v. Doe* that ASORA does not violate the federal ex post facto clause,[33] Doe argues that the Alaska Constitution provides more protection than the Federal Constitution. Doe urges us to read the Alaska ex post facto clause in conjunction with the due process clause [34]

---

**25.** *Doe v. State, Dep't of Pub. Safety* (*Doe A* ), 92 P.3d 398, 402 (Alaska 2004) (holding that ASORA's registration requirements violated due process rights of set-aside recipients whose suspended impositions of sentences were entered under provisions that require substantial showing of rehabilitation).

**26.** *State v. Murtagh,* 169 P.3d 602, 606 (Alaska 2007) (holding certain provisions of Alaska Victims Rights' Act unconstitutional because they interfered with criminal defense investigations without adequate justification).

**27.** *Doe A,* 92 P.3d at 402.

**28.** *In re Estate of Blodgett,* 147 P.3d 702, 711 (Alaska 2006) (quoting *Danks v. State,* 619 P.2d 720, 722 n. 3 (Alaska 1980)); *see also Kahn v. Inspector Gen. of U.S. Dep't of Health & Human Servs.,* 848 F.Supp. 432, 437 (S.D.N.Y.1994) (quoting BLACK'S LAW DICTIONARY 520 (5th ed.1979)).

**29.** *State v. Anthony,* 816 P.2d 1377, 1378 (Alaska 1991) (quoting *Dobbert v. Florida,* 432 U.S. 282, 292, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977)).

**30.** *Id.; see De Veau v. Braisted,* 363 U.S. 144, 160, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960).

**31.** *See Smith,* 538 U.S. at 92, 123 S.Ct. 1140; *Kansas v. Hendricks,* 521 U.S. 346, 361–69, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997); *United States v. Ward,* 448 U.S. 242, 248–49, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980).

**32.** Ch. 41, SLA 1994.

**33.** *Smith v. Doe,* 538 U.S. 84, 105–06, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003).

**34.** Alaska Const. art. I, § 7 ("No person shall be deprived of life, liberty, or property, without due process of law. The right of all persons to fair and just treatment in the course of legislative and executive investigations shall not be infringed.").

and article I, section 1 [35] of the Alaska Constitution. He argues that Alaska's due process and ex post facto clauses, unlike the corresponding federal clauses, are aimed at the legislature and that both clauses are intended to "protect individual liberties from retroactive infringement." Doe therefore reasons that we should interpret Alaska's ex post facto clause more broadly than the corresponding federal clause. He alternatively argues that ASORA is an invalid ex post facto law even if Alaska's ex post facto clause is coextensive with its federal counterpart because ASORA is punitive under the federal standard.

The state responds that ASORA is a regulatory law intended to help protect the public by collecting information and making it publicly accessible. It argues that ASORA is not a penal law, and that it was not intended to punish convicted individuals for past acts. The state also contends that because our past decisions discussing the ex post facto clause have interpreted the Alaska prohibition to be the same as the federal prohibition,[36] the doctrine of stare decisis obliges us to hold that the Alaska provision is coextensive with the federal provision. The state consequently concludes that because ASORA satisfies the federal ex post facto clause, ASORA also satisfies Alaska's ex post facto clause.[37]

## 2. Stare decisis

The state correctly notes that we have relied on federal precedent and analysis in addressing state ex post facto claims in the past.

We concluded in one case that a decision of the Supreme Court addressing an ex post facto challenge to a statute equivalent to the statute then before us "is dispositive of any claim based on the federal constitution, and we see no reason for us to interpret Alaska's constitutional provision differently." [38] In another case, we saw "no reason to construe our parallel *ex post facto* prohibition—article I, section 15—differently from the federal provision." [39] In another, we relied on a Supreme Court opinion in concluding that the challenged statute was compensatory rather than punitive and that it therefore did not violate either the federal or state ex post facto clause.[40] And in another case, we stat-

**35.** Article I, section 1 of the Alaska Constitution provides:

This constitution is dedicated to the principles that all persons have a natural right to life, liberty, the pursuit of happiness, and the enjoyment of the rewards of their own industry; that all persons are equal and entitled to equal rights, opportunities, and protection under the law; and that all persons have corresponding obligations to the people and to the State.

**36.** The state refers us to *State v. Coon*, 974 P.2d 386, 391–92 (Alaska 1999) ("We construe our state [ex post facto] prohibition no differently than the federal prohibition."); *Anthony*, 816 P.2d at 1378 n. 1 ("The parties agree that the ex post facto prohibition of the Alaska Constitution is the same as that of the United States Constitution."); *State v. Creekpaum*, 753 P.2d 1139, 1144 (Alaska 1988); and *Danks v. State*, 619 P.2d 720, 722 (Alaska 1980).

**37.** *Cf. Smith*, 538 U.S. at 105–06, 123 S.Ct. 1140 (holding that applying ASORA to Doe does not violate federal ex post facto clause).

**38.** *Danks*, 619 P.2d at 722 (citing and approvingly quoting from *Gryger v. Burke*, 334 U.S. 728, 732, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948) ("The sentence as a fourth offender or habitual criminal is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is

considered to be an aggravated offense because it is a repetitive one.")). We there considered whether revoking Danks's driver's license because he had committed two offenses before the revocation statute was enacted violated the federal and state prohibitions on ex post facto laws. *Id.* Noting that the Supreme Court had rejected a similar attack on a habitual offender statute that provided enhanced punishment for a fourth felony conviction, we affirmed the revocation. *Id.*

**39.** *Creekpaum*, 753 P.2d at 1143. Creekpaum contended that an extended statute of limitations was an unconstitutional ex post facto law as applied to him. *Id.* at 1140. When he allegedly committed the offense, the applicable statute of limitations was five years. *Id.* Three years later the Alaska Legislature retroactively enlarged the period for bringing charges of sexual abuse of a minor. *Id.* Creekpaum was indicted five years and two months after the alleged offense. *Id.* Relying on decisions of the United States Supreme Court and the Seventh and Ninth Circuit Courts of Appeals, we concluded that because the extension did not increase the punishment or change the elements of the offense necessary to establish guilt, it did not violate the Federal or the Alaska Constitution. *Id.* at 1143–44.

**40.** *Anthony*, 816 P.2d at 1378. Anthony raised an ex post facto challenge to a statute making incarcerated felons convicted of crimes prior to

ed that "[w]e construe our state [ex post facto] prohibition no differently than the federal prohibition."[41]

In short, having seen "no reason" to do otherwise,[42] we construed Alaska's ex post facto prohibition in those cases to be coextensive with the corresponding federal prohibition. We therefore accepted the federal analyses and results. We did so notwithstanding our contemporaneous and repeated recognition that we have the authority and, when necessary, duty to construe the provisions of the Alaska Constitution to provide greater protections than those arising out of the identical federal clauses.[43]

In following federal authority, our ex post facto cases have implicitly reasoned that it was unnecessary in those cases either to deviate from the federal analytical approach or to construe our constitution more protectively.[44] We implicitly so reasoned because the federal decisions reached an outcome not inconsistent with the Alaska Constitution.

Nonetheless, we have never endorsed federal ex post facto analysis as superseding or limiting our independent consideration of Alaska's ex post facto prohibition.[45] Nor have we indicated that federal interpretation of the federal ex post facto prohibition prevents us from reaching a different, and more protective, result under the Alaska Constitution.

Stare decisis therefore has no application here. Today's decision does not overrule or depend on overruling any prior decision of this court, nor does it depart from any past holding of this court. We have never adopted a reading of Alaska's ex post facto prohibition that would, unless overruled, foreclose today's result.[46]

Nor is today's decision, or the analysis we apply here, inconsistent with the analytical approach we have approved for deciding ex post facto claims under the Alaska Constitution. Our reliance on the multifactor effects test is consistent with our past use of federal

the statute's effective date ineligible for permanent fund dividends. *Id.* at 1377–78. Relying in part on *De Veau v. Braisted,* 363 U.S. 144, 160, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960), which upheld a statute that was enacted for valid regulatory purposes and that was not punitive in effect, we concluded that because the statute's purposes were compensatory rather than punitive it did not violate either the federal or state ex post facto clause. *Id.*

41. *Coon,* 974 P.2d at 391–92. Coon argued that judicially changing the standard of scientific evidence violated the federal and state ex post facto clauses. We rejected Coon's argument because the ex post facto prohibition applies only to legislative acts, not to judicial decisions. *Id.* at 391. In dictum, we also noted that even if we applied the prohibition to judicial decisions, the Supreme Court, in *Thompson v. Missouri,* 171 U.S. 380, 387–88, 18 S.Ct. 922, 43 L.Ed. 204 (1898), had upheld against ex post facto challenge a statute that made admissible in a criminal case evidence that was not admissible under the rules of evidence as enforced by judicial decisions when the offense was committed.

42. *Danks,* 619 P.2d at 722.

43. *See Blue v. State,* 558 P.2d 636, 641–43 (Alaska 1977) (pre-indictment right to counsel); *Lemon v. State,* 514 P.2d 1151, 1154 n. 5 (Alaska 1973) (right of confrontation); *Lanier v. State,* 486 P.2d 981, 986 (Alaska 1971) (right of confrontation); *Whitton v. State,* 479 P.2d 302, 309 (Alaska 1970) (double jeopardy); *Baker v. City of Fairbanks,* 471 P.2d 386, 401–02 (Alaska 1970)

(right to jury trial); *Roberts v. State,* 458 P.2d 340, 342–43 (Alaska 1969) (pre-trial right to counsel).

44. *Accord Arizona v. Casey,* 205 Ariz. 359, 71 P.3d 351, 354 (2003) ("Normally we interpret clauses in the Arizona Constitution in conformity with decisions of the United States Supreme Court and its interpretation of similar clauses in the United States Constitution. However, interpretation of the state constitution is, of course, our province." (citation and internal quotations omitted)).

45. *Cf.* Robert F. Williams, *State Courts Adopting Federal Constitutional Doctrine: Case–By–Case Adoptionism or Prospective Lockstepping?,* 46 Wm. & Mary L.Rev. 1499, 1521 (2005) ("[S]tatements [adopting federal constitutional doctrine] ... should neither bind lawyers in their arguments nor the court itself in future cases. It is beyond the state judicial power to *incorporate* the Federal Constitution and its future interpretations into the state constitution." (Emphasis in original.)).

46. "The principle of stare decisis requires that two conditions be met to depart from precedent: We must conclude that the decision was erroneous when it was decided and that the change represents good public policy such that 'more good than harm [will] result' from the departure." *State v. Semancik,* 99 P.3d 538, 540 (Alaska 2004). Because our previous decisions have not foreclosed the possibility of relief to Doe, we do not need to consider whether these two requirements have been met.

law in resolving state ex post facto claims.[47] And in applying that test here we also reach a result consistent with what the federal standards appear to have been before 2003, when the Supreme Court decided *Smith*.[48]

That the Supreme Court, after considering the same factors and same statute that we consider today, held in *Smith v. Doe* that there was no ex post facto violation may seem to raise several questions. First, why doesn't *Smith's* holding control this case as a matter of stare decisis? Second, why doesn't *Smith's* discussion of the multifactor effects test control our analysis in applying the same factors? Third, even if *Smith's* discussion of those factors is not directly controlling, how can we rationally disagree with it?

As to the first question, *Smith's* holding is not stare decisis here because Doe's claims are based on the Alaska Constitution, whereas *Smith* was based exclusively on the Federal Constitution.[49] *Smith* did not apply state law or decide state law issues.

As to the second question, how we apply the multifactor effects test in deciding an ex post facto claim under the Alaska Constitution is not governed by how the federal courts independently apply the same test under the Federal Constitution, as long as our interpretation is at least as protective as the federal interpretation.[50] What we have said in our ex post facto cases cannot be read as prospectively limiting the protections of the Alaska Constitution to what federal courts might later say the corresponding federal clauses provide. Nor could we have done so.[51]

Finally, the Supreme Court's discussion in *Smith* certainly informs our analysis here. But it does not and cannot preempt our independent analysis or dictate the result we reach. Our interpretation of a clause in the Alaska Constitution is not limited by the Supreme Court's interpretation of the corresponding federal clause.[52] As the Supreme Court has recognized,

> [i]f a state court chooses merely to rely on federal precedents as it would on the precedents of all other jurisdictions, then it need only make clear by a plain statement in its judgment or opinion that the federal cases are being used only for the purpose of guidance, and do not themselves compel the result that the court has reached.[53]

**47.** *See Coon*, 974 P.2d at 391–92; *State v. Anthony*, 816 P.2d 1377, 1378 (Alaska 1991); *Creekpaum*, 753 P.2d at 1143; *Danks*, 619 P.2d at 722.

**48.** *See Doe I v. Otte*, 259 F.3d 979, 993–95 (9th Cir.2001) (holding that applying ASORA to Doe violated federal ex post facto clause), *rev'd sub nom. Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003).

**49.** *Smith v. Doe*, 538 U.S. 84, 92, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003); *see also Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) ("[S]tate courts are the ultimate expositors of state law.").

**50.** *See Lemon*, 514 P.2d at 1154 n. 5 (explaining that this court may adopt its own interpretation of Alaska Constitution as long as it meets minimum standards set by United States Supreme Court interpreting Federal Constitution).

**51.** As we stated in *Doe v. State, Department of Public Safety* (*Doe A*):

> We may not undermine the minimum protections established by the United States Supreme Court's interpretations of the Federal Constitution. But we have repeatedly explained that we are free, and we are under a duty, to develop additional constitutional rights and privileges under our Alaska Constitution if

> we find such fundamental rights and privileges to be within the intention and spirit of our local constitutional language and to be necessary for the kind of civilized life and ordered liberty which is at the core of our constitutional heritage.

> 92 P.3d 398, 404 (Alaska 2004) (quoting *Baker*, 471 P.2d at 402).

**52.** *Id.*

**53.** *Michigan v. Long*, 463 U.S. 1032, 1041, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983); *see also* Lawrence Friedman, *Reactive and Incompletely Theorized State Constitutional Decision–Making*, 77 Miss L.J. 265, 313 (Fall 2007) ("[T]he court should explicate the basis for a difference of opinion over the meaning or application of a constitutional provision that is textually similar— that the state court should provide a deeper justification for a constitutional ruling than simple disagreement with a majority of the United States Supreme Court. There is nothing wrong with such disagreement, of course; the Supreme Court is not infallible. But ... state constitutional decisions that lack meaningful rationales for the court's interpretive and doctrinal choices ... fail to contribute meaningfully to constitutional discourse and may well impede the efficient administration of justice.").

Consequently, the results of the federal opinions do not control our independent analysis when, in interpreting the Alaska Constitution, we look for guidance to either federal precedent or the analytical framework applied by federal courts. Our adoption of the analytical approach approved by the federal courts likewise does not mean that we are bound by how the Supreme Court applied that approach in *Smith.* The question before us is whether applying ASORA to Doe violates Alaska's ex post facto provision. As to that question, Alaska retains its sovereign authority.

### 3. Our choice of analytical approach

We begin our analysis by identifying the appropriate analytical framework. In *Smith v. Doe,* the Supreme Court considered the identical issue under the Federal Constitution and applied the multifactor "intent-effects" test derived from the Court's prior decisions.[54] Under this test, a court first determines whether the legislature intended to impose punishment; if punishment was the intent, the court's inquiry ends.[55] But if the court concludes that the legislature intended a non-punitive regulatory scheme, the court next analyzes the effects of the statute under a number of factors to determine whether the statute is nonetheless punitive in effect.[56] Our court has never adopted this test, but the Alaska Court of Appeals applied it in considering and rejecting an ex post facto challenge to ASORA in *Patterson v. State.*[57]

The intent-effects test provides an appropriate analytical framework here. Although a multifactor test is potentially susceptible to different conclusions, the availability of reported decisions applying that test helps inform its application in new cases.

Our conclusion that it is appropriate to apply the federal test to our state law inquiry in this case is consistent with our independent consideration of each of the test's seven factors, because we are here both construing the protections of our constitution and reviewing an enactment of our legislature. Therefore, even though we choose to consider the same factors the federal courts use to distinguish between civil remedies and criminal penalties,[58] we give independent consideration to these factors in applying the Alaska Constitution.

### C. ASORA Is Punitive for Purposes of the Alaska Ex Post Facto Clause.

■ The intent-effects test would usually first require us to consider whether the Alaska Legislature, when it enacted ASORA, intended to enact a regulatory scheme that is civil and non-punitive.[59] If the purpose was not punishment but regulation, the test would next require us to determine whether the effects of regulation are so punitive that we must nonetheless conclude that ASORA imposes punishment.[60]

It is not necessary to address the first step of the test—whether the legislature intended ASORA to punish convicted sex offenders—because the second part of the test—whether ASORA's effects are punitive—resolves the dispute before us. Assuming without deciding that the legislature intended ASORA to be non-punitive,[61] we therefore focus on the

---

**54.** *Smith,* 538 U.S. at 92, 123 S.Ct. 1140; *see also United States v. Ward,* 448 U.S. 242, 248–49, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980); *Russell v. Gregoire,* 124 F.3d 1079, 1084 (9th Cir.1997) (referring to the two-step inquiry as the "intent-effects test").

**55.** *Smith,* 538 U.S. at 92, 123 S.Ct. 1140.

**56.** *Id.*

**57.** *Patterson v. State,* 985 P.2d 1007, 1011 (Alaska App.1999), *overruled in part on other grounds, Doe A,* 92 P.3d at 412 n. 83.

**58.** *Hudson v. United States,* 522 U.S. 93, 99–100, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997). The Supreme Court has applied this inquiry in ad-

dressing constitutional issues of double jeopardy, ex post facto, and self-incrimination claims. *See, e.g., Kansas v. Hendricks,* 521 U.S. 346, 360–61, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997) (applying the intent-effects test to double jeopardy and ex post facto claims); *Ward,* 448 U.S. at 248–49, 100 S.Ct. 2636 (applying test to claim alleging violation of right against compulsory self-incrimination).

**59.** *Smith,* 538 U.S. at 92, 123 S.Ct. 1140.

**60.** *Id.*

**61.** This assumption also makes it unnecessary to decide whether, as some commentators have suggested, the court should employ heightened

statute's effects to determine whether they are punitive.[62]

In assessing a statute's effects, the Supreme Court indicated in *Ward* the seven factors it listed in 1963 in *Kennedy v. Mendoza–Martinez* "provide some guidance": [63]

(1) "[w]hether the sanction involves an affirmative disability or restraint";

(2) "whether it has historically been regarded as a punishment";

(3) "whether it comes into play only on a finding of scienter";

(4) "whether its operation will promote the traditional aims of punishment—retribution and deterrence";

(5) "whether the behavior to which it applies is already a crime";

(6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and

(7) "whether it appears excessive in relation to the alternative purpose assigned." [64]

The Supreme Court has not explained the relative weight to be afforded each factor. But the Court has recognized that the factors "often point in differing directions" and that no one factor is determinative.[65] Determining whether a statute is punitive necessarily involves the weighing of relatively subjective factors.

We address each of the factors in turn.

### 1. Affirmative disability or restraint

We first ask "[w]hether the sanction involves an affirmative disability or restraint." [66] The state argues that ASORA involves neither because it imposes no physical restraint, has obligations less harsh than occupational debarment—which the Supreme Court has held to be non-punitive [67]—and, in the Supreme Court's words, "restrains [no]

scrutiny when reviewing the legislature's intent. See, e.g., Wayne A. Logan, *The Ex Post Facto Clause and the Jurisprudence of Punishment*, 35 Am.Crim. L.Rev. 1261, 1288–91 (1998).

**62.** The Supreme Court stated in *Smith* that "only the clearest proof" would suffice to transform a remedy designated by the legislature as civil into a criminal penalty. *Smith*, 538 U.S. at 92, 123 S.Ct. 1140. But in deciding whether a statute violates the Alaska Constitution we accord the challenged statute a presumption of constitutionality. *Alaska Civil Liberties Union v. State*, 122 P.3d 781, 785 (Alaska 2005) ("A constitutional challenge to a statute must overcome a presumption of constitutionality."). We adhere to this approach here. Consequently, imposing a heightened presumption requiring "clearest proof" of punitive effect could threaten rights protected by the Alaska Constitution and might be inconsistent with the responsibilities of this court. *See State v. Murtagh*, 169 P.3d 602, 609 (Alaska 2007) ("It is the obligation of the courts to interpret [provisions of the Alaska Constitution granting rights to those accused of crime] so that they may be applied in particular cases and to ensure that the rights they provide are not infringed by any form of state action. 'Under Alaska's constitutional structure of government, the judicial branch ... has the constitutionally mandated duty to ensure compliance with the provisions of the Alaska Constitution, including compliance by the legislature.' ").

**63.** *Ward*, 448 U.S. at 249, 100 S.Ct. 2636; *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); *see also*

*Patterson*, 985 P.2d at 1013 (applying *Mendoza–Martinez* factors to ex post facto challenge to ASORA). The Supreme Court has applied the *Mendoza–Martinez* factors to a broad array of legislative enactments to determine whether a sanction is civil or criminal in nature. *See, e.g., Smith*, 538 U.S. at 92, 97–105, 123 S.Ct. 1140 (involving civil-criminal distinction in sex offender registration laws); *Hudson*, 522 U.S. at 104–05, 118 S.Ct. 488 (concerning monetary penalties and occupational debarment for banking law violations); *Hendricks*, 521 U.S. at 361–71, 117 S.Ct. 2072 (concerning civil commitment for sexually violent predators); *United States v. Salerno*, 481 U.S. 739, 747–51, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (addressing whether preventative detention served remedial purpose of preventing danger to community); *Ward*, 448 U.S. at 249, 100 S.Ct. 2636 (concerning monetary penalties assessed for violating Clean Water Act).

**64.** *Mendoza–Martinez*, 372 U.S. at 168–69, 83 S.Ct. 554.

**65.** *Hudson*, 522 U.S. at 101, 118 S.Ct. 488 (quoting *Mendoza–Martinez*, 372 U.S. at 169, 83 S.Ct. 554).

**66.** *Mendoza–Martinez*, 372 U.S. at 168, 83 S.Ct. 554.

**67.** *Hudson*, 522 U.S. at 105, 118 S.Ct. 488; *De Veau v. Braisted*, 363 U.S. 144, 160, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960); *Hawker v. New York*, 170 U.S. 189, 196–200, 18 S.Ct. 573, 42 L.Ed. 1002 (1898).

activities sex offenders may pursue but leaves them free to change jobs or residences." [68]

But even though the statute imposes no physical restraints, we agree with Justice Stevens's dissenting comments in *Smith* that ASORA "impose[s] significant affirmative obligations and a severe stigma on every person to whom [it] appl[ies]." [69] First, ASORA compels affirmative post-discharge conduct (mandating registration, re-registration, disclosure of public and private information, and updating of that information) under threat of prosecution. [70] The duties are significant and intrusive, because they compel offenders to contact law enforcement agencies and disclose information, some of which is otherwise private, most of it for public dissemination. [71] Furthermore, the time periods associated with ASORA are intrusive. [72] Sex offenders convicted of an aggravated sex offense [73] or two or more sex offenses must re-register

quarterly for the rest of their lives; all other offenders must re-register annually for fifteen years. [74] All sex offenders who change residences must notify the state trooper office or municipal police department closest to their new residences within one working day. [75] As we stated in *Doe v. State, Department of Public Safety* (*Doe A*), "ASORA thus treats offenders not much differently than the state treats probationers and parolees subject to continued state supervision." [76]

Second, we agree with the conclusion of Justice Ginsburg, also dissenting in *Smith*, that ASORA "exposes registrants, through aggressive public notification of their crimes, to profound humiliation and community-wide ostracism." [77] In the decision reversed in *Smith*, the Ninth Circuit observed that "[b]y posting [registrants'] names, addresses, and employer addresses on the internet, the Act subjects [registrants] to community obloquy and scorn that damage

**68.** *Smith*, 538 U.S. at 100, 123 S.Ct. 1140. The reality seems much different. *See infra* notes 80, 81, and 85. The argument that registered sex offenders are free to change jobs and residences calls to mind Anatole France's view of the "majestic equality of the laws, which forbid rich and poor alike to sleep under the bridges, to beg in the streets, and to steal their bread." ANATOLE FRANCE, THE RED LILY 75 (The Modern Library 1917) (1894). We cannot allow the mere appearance of equal freedom to obscure the reality of its denial.

**69.** *Smith*, 538 U.S. at 111, 123 S.Ct. 1140 (Stevens, J., dissenting).

**70.** *See* AS 12.63.010; AS 11.56.840 (defining failure to register—which includes failure to file change of address, failure to re-register annually or quarterly, and failure to supply all required information—as class A misdemeanor, punishable by up to one year in jail and up to $10,000 fine); AS 12.55.035(b)(5); AS 12.55.135(a). Effective January 1, 2009, failure to register will also include failure to file written notice of the establishment of or change to an e-mail or messaging address or internet communication identifier. Ch. 42, § 1, SLA 2008.

**71.** *Doe v. State, Dep't of Pub. Safety* (*Doe A*), 92 P.3d 398, 409 (Alaska 2004).

**72.** *See id.*

**73.** ASORA defines "aggravated sex offense" as:
(A) a crime under AS 11.41.100(a)(3), or a similar law of another jurisdiction, in which

the person committed or attempted to commit a sexual offense, or a similar offense under the laws of the other jurisdiction....
(B) a crime under AS 11.41.110(a)(3), or a similar law of another jurisdiction, in which the person committed or attempted to commit one of the following crimes, or a similar law of another jurisdiction:
(i) sexual assault in the first degree;
(ii) sexual assault in the second degree;
(iii) sexual abuse of a minor in the first degree; or
(iv) sexual abuse of a minor in the second degree; or
(C) a crime, or an attempt, solicitation, or conspiracy to commit a crime, under AS 11.41.410, 11.41.434, or a similar law of another jurisdiction or a similar provision under a former law of this state.
AS 12.63.100(1).

**74.** AS 12.63.010(d), .020(a).

**75.** AS 12.63.010(c).

**76.** *Doe v. State, Dep't of Pub. Safety* (*Doe A*), 92 P.3d 398, 409 (Alaska 2004); *see also Smith v. Doe*, 538 U.S. 84, 111, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) (Stevens, J., dissenting) (stating that these obligations are "comparable to the duties imposed on other convicted criminals during periods of supervised release or parole").

**77.** *Smith*, 538 U.S. at 115, 123 S.Ct. 1140 (Ginsburg, J., dissenting).

them personally and professionally."[78] The Ninth Circuit observed that the practical effect of this dissemination is that it leaves open the possibility that the registrant will be denied employment and housing opportunities as a result of community hostility.[79] As Justice Souter noted in concurring in *Smith*, "there is significant evidence of onerous practical effects of being listed on a sex offender registry."[80] Outside Alaska, there have been reports of incidents of suicide by and vigilantism against offenders on state registries.[81]

We also disagree with the Supreme Court's conclusion in *Smith* that the obligations ASORA imposes are less harsh than the occupational debarment which the Court

has held to be non-punitive.[82] The Supreme Court has upheld the constitutionality of post-conduct professional sanctions that included the prohibition of further participation in the banking industry[83] and revocation of medical licenses.[84] A comparable bar for sex offenders who pose a risk to children might be employment in places frequented by children. But the practical effects here can predictably extend to *all* employment opportunities as well as to all other non-employment aspects of life, including housing opportunities. There are published reports that offenders are sometimes subjected to protests and group actions designed to force them out of their jobs and homes.[85] We agree that "[t]he practical effect of such un-

---

78. *Doe I v. Otte*, 259 F.3d 979, 987 (9th Cir. 2001), *rev'd sub nom. Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003).

79. *Id.* at 988.

80. *Smith*, 538 U.S. at 109, 123 S.Ct. at 1156 n. * (Souter, J., concurring); *see also E.B. v. Verniero*, 119 F.3d 1077, 1102 (3d Cir.1997) ("Employment and employment opportunities have been jeopardized or lost. Housing and housing opportunities have suffered a similar fate."); *Doe v. Pataki*, 120 F.3d 1263, 1279 (2d Cir.1997) (noting that "sex offenders have suffered harm in the aftermath of public dissemination—ranging from public shunning, picketing, press vigils, ostracism, loss of employment, and eviction, to threats of violence, physical attacks, and arson").

81. *See, e.g., Neighbor Convicted of Stalking Sex Offender*, AKRON BEACON JOURNAL, Dec. 13, 2007, *available at* EBSCO, 2W62W62425089428 (vigilantism); John R. Ellement & Suzanne Smalley, *Sex Crime Disclosure Questioned: Maine Killings Refuel Debate Over Registries*, BOSTON GLOBE, Apr. 18, 2006, at A1, *available at* 2006 WLNR 6463014 (vigilantism); Kira Millage, *Killer of 2 Sex Offenders Pleads Guilty*, BELLINGHAM HERALD (Wash.), Mar. 10, 2006, at 1A, *available at* 2006 WLNR 5238375 (vigilantism); Carolyn Starks & Jeff Long, *Abuser Killed Self, Family Says*, CHICAGO TRIB., May 27, 2005, at 1, *available at* 2005 WLNR 23429797 (suicide); Cara Buckley, *Town Torn Over Molester's Suicide*, MIAMI HERALD, Apr. 23, 2005, at 1A, *available at* 2005 WLNR 23022255 (suicide); Brian MacQuarrie, *Man Defends Attacks on Sex Offenders, Crusader Gets Jail Term*, BOSTON GLOBE, Dec. 5, 2004, at A1, *available at* 2004 WLNR 13142566 (vigilantism); *see also* Richard Tewksbury, *Collateral Consequences of Sex Offender Registration*, 21 J. CONTEMP. CRIM. JUST. 67, 75 (2005) (noting that in a study of 121 registered sex offenders in Kentucky, 47 percent reported being harassed in person, 16.2 percent reported being assaulted, 28.2 percent reported receiving harassing or threatening telephone

calls, and 24.8 percent reported receiving harassing or threatening mail as a result of being listed on publicly accessible registries); Alvin Malesky & Jeanmarie Keim, *Mental Health Professionals' Perspectives on Sex Offender Registry Web Sites*, 13 SEXUAL ABUSE· J. RES. & TREATMENT 53, 59 (2001) (reporting that in a study of 133 mental health professionals who work with sex offenders, 62.9 percent of respondents believed that sex offenders listed in public sex offender registry websites will become targets of vigilantism in the community).

82. *Smith*, 538 U.S. at 100, 123 S.Ct. 1140; *see also Smith*, 538 U.S. at 109, 123 S.Ct. at 1156 n. * (Souter, J., concurring) ("I seriously doubt that the Act's requirements are 'less harsh than the sanctions of occupational debarment'....").

83. *Hudson v. United States*, 522 U.S. 93, 105, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997).

84. *Hawker v. New York*, 170 U.S. 189, 200, 18 S.Ct. 573, 42 L.Ed. 1002 (1898).

85. *See, e.g.,* Jan Hollingsworth, *Protesters Hound Owner of Pet Shop*, TAMPA TRIB., Jan. 27, 2008, *available at* EBSCO, 2W62W62852777149 (describing community protests that forced registered sex offender to close his business); Corey Kilgannon, *Threats of Violence as Homes for Sex Offenders Cluster in Suffolk*, N.Y. TIMES, Oct. 9, 2006, at B1, *available at* 2006 WLNR 17438262 (recounting neighborhood's efforts to drive out registrants); Emily Ramshaw, *'Sex Offender' Label Makes No Distinction: For Many Men, Registry Has Lasting and Devastating Effects*, DALLAS MORNING NEWS, Oct. 2, 2006, *available at* EBSCO, 2W62W61689001016 (stating that registrant has lost multiple jobs after employers learned he was on sex offender registry); Carolyn Marshall, *Taking the Law into their Own Hands*, N.Y. TIMES, Apr. 20, 2004, at A12, *available at* 2004 WLNR 4787938 (describing how residents put pressure

restricted dissemination could make it impossible for the offender to find housing or employment." [86]

The state argues, however, that the negative effects that Doe emphasizes (negative impacts on employment and housing opportunities) will exist even if Doe is not subject to ASORA because those consequences result not from registration and dissemination of information, but from the conviction itself. Moreover, the state asserts that there is no evidence that Alaskans have directed any wrath at convicted sex offenders and notes that the sex offender registry website warns viewers about using registry information to commit a criminal act.[87]

Neither of these arguments is persuasive. ASORA requires release of information that is in part not otherwise public or readily available. Moreover, the regulations authorize dissemination of most ASORA registration information "for any purpose, to any person." [88] Taken in conjunction with the Alaska Public Records Act,[89] ASORA's treatment of this information, confirmed by the regulations, seems to require that the information be publicly available. By federal law, it is disseminated statewide, indeed worldwide, on the state's website.[90] There is a significant distinction between retaining public paper records of a conviction in state file

drawers and posting the same information on a state-sponsored website; this posting has not merely improved public access but has broadly disseminated the registrant's information, some of which is not in the written public record of the conviction. As the Alaska Court of Appeals noted, "ASORA does provide for dissemination of substantial personal and biographical information about a sex offender that is not otherwise readily available from a single governmental source." [91] We also recognized in *Doe A* that several sex offenders had stated that they had lost their jobs, been forced to move from their residences, and received threats of violence following establishment of the registry, even though the facts of their convictions had always been a matter of public record.[92] We therefore conclude that the harmful effects of ASORA stem not just from the conviction but from the registration, disclosure, and dissemination provisions.

We are also unpersuaded by the state's assertion that there is insufficient evidence to establish that harmful effects have actually occurred in Alaska. Doe's affidavit contains excerpts from affidavits submitted in the federal court. The excerpts recite instances of registrants losing employment, having difficulty finding housing and employment, and

on landlords to refuse housing to registered offenders); *see also* Tewksbury, *supra* note 81, at 75 (noting that 42.7 percent of respondents reported loss of job and 45.3 percent of respondents reported loss or denial of place to live after being listed on publicly accessible registries); Richard G. Zevitz & Mary Ann Farkas, *Sex Offender Community Notification: Managing High Risk Criminals or Exacting Further Vengeance?*, 18 Behav. Sci. & Law 375, 381 (2000) (describing a study consisting of face-to-face interviews with thirty sex offenders throughout Wisconsin subject to various forms of community notification, and noting that 83 percent of respondents reported exclusion of residence and 57 percent reported loss of employment as a direct result of notification).

**86.** *State v. Myers*, 260 Kan. 669, 923 P.2d 1024, 1043–44 (1996), *cert. denied*, 521 U.S. 1118, 117 S.Ct. 2508, 138 L.Ed.2d 1012 (1997) (holding that public dissemination provision of Kansas registration act, as applied to sex offenders who committed their crimes before act's effective date, violates ex post facto clause of United States Constitution).

**87.** *See* Alaska Department of Public Safety, *Sex Offender Registration/Child Kidnapper Central Registry*, http://www.dps.state.ak.us/sorweb/sorweb.aspx ("Using information from this site to commit a crime may result in criminal prosecution.") (last visited July 21, 2008).

**88.** 13 AAC 09.050(a).

**89.** AS 40.25.110(a) ("Unless specifically provided otherwise, the public records of all public agencies are open to inspection by the public. . . .").

**90.** 42 U.S.C. § 14071(e)(2) ("The release of information . . . shall include the maintenance of an Internet site containing such information that is available to the public and instructions on the process for correcting information that a person alleges to be erroneous."); *see* 13 AAC 09.050(a); AS 18.65.087(h).

**91.** *Patterson v. State*, 985 P.2d 1007, 1013 (Alaska App.1999), *overruled in part on other grounds*, *Doe A*, 92 P.3d at 412 n. 83.

**92.** *Doe A*, 92 P.3d at 410.

moving out of the marital home due to fear of the effects public dissemination would have on their families. Similarly, the Ninth Circuit, when addressing Doe's earlier ex post facto challenge to ASORA, noted that the record before that court contained evidence that a sex offender suffered community hostility and damage to his business after printouts of the Alaska sex offender registration website were publicly distributed and posted on bulletin boards.[93]

### 2. Sanctions that have historically been considered punishment

We next determine "whether [the statute's effects have] historically been regarded as a punishment."[94] ASORA does not expressly impose sanctions that have been historically considered punishment.[95] Because registration acts such as ASORA are "of fairly recent origin," courts addressing this issue have determined that there is no historical equivalent to these registration acts.[96] Some courts have instead considered whether the acts are analogous to the historical

punishment of shaming; these courts have concluded that they are not.[97] But the dissemination provision at least resembles the punishment of shaming[98] and the registration and disclosure provisions "are comparable to conditions of supervised release or parole."[99] And these provisions have effects like those resulting from punishment. The fact that ASORA's registration reporting provisions are comparable to supervised release or parole supports a conclusion that ASORA is punitive.

### 3. Finding of scienter

Third, we consider "whether [the statute] comes into play only on a finding of scienter."[100] The obligations of ASORA are not imposed solely upon the finding of scienter.[101] ASORA also applies to strict liability offenses, such as statutory rape, that the law deems sufficiently harmful to effectively assume scienter.[102] But even though ASORA applies to a few strict liability offenses, it overwhelmingly applies to offenses that re-

93. *Otte,* 259 F.3d at 987–88, *rev'd sub nom. Smith v. Doe,* 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003).

94. *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963).

95. *Otte,* 259 F.3d at 989, *rev'd sub nom. Smith v. Doe,* 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003).

96. *Smith,* 538 U.S. at 97, 123 S.Ct. 1140 (citing *Otte,* 259 F.3d at 989); *see also Pataki,* 120 F.3d at 1284.

97. *See, e.g., Otte,* 259 F.3d at 989, *rev'd sub nom. Smith v. Doe,* 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003).

98. *E.B. v. Verniero,* 119 F.3d 1077, 1115–19 (3d Cir.1997) (Becker, J., concurring in part and dissenting in part); *see also Smith,* 538 U.S. at 115–16, 123 S.Ct. 1140 (Ginsburg, J., dissenting). One commentator suggests that dissemination provisions "cause sex offenders to suffer from nonlegal sanctions that have little to do with prevention and have much more to do with reciprocity and a norm of sanctioning." Doron Teichman, *Sex, Shame, and the Law: An Economic Perspective on Megan's Laws,* 42 Harv J. on Legis. 355, 399 (2005).

99. *Smith,* 538 U.S. at 115, 123 S.Ct. 1140 (Ginsburg, J., dissenting); *see also Smith,* 538 U.S. at

111, 123 S.Ct. 1140 (Stevens, J., dissenting); *Doe A,* 92 P.3d at 409; Andrea E. Yang, Comment, *Historical Criminal Punishments, Punitive Aims and Un-"Civil" Post–Custody Sanctions on Sex Offenders: Reviving the Ex Post Facto Clause as a Bulwark of Personal Security and Private Rights,* 75 U. Cin. L.Rev. 1299, 1328 n. 199 (2007) (citing Joan Petersilia, Community Corrections: Probation, Parole and Intermediate Sanctions 1, 19–24 (Oxford 1998)) (noting that because actual supervision of parolees and probationers is minimal due to high supervisory officer caseloads, only about half of probationers comply with probation requirements and therefore suggesting that sex offender restrictions "may actually exceed those of probationers and parolees").

100. *Mendoza–Martinez,* 372 U.S. at 168, 83 S.Ct. 554.

101. *Doe I v. Otte,* 259 F.3d 979, 989 (9th Cir. 2001), *rev'd sub nom. Smith v. Doe,* 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003).

102. *See* AS 12.63.100(6)(C)(i); AS 11.41.434–.438; *Hentzner v. State,* 613 P.2d 821, 826 (Alaska 1980) ("Where the crime involved may be said to be *malum in se,* that is, one which reasoning members of society regard as condemnable, awareness of the commission of the act necessarily carries with it an awareness of wrongdoing. In such a case the requirement of criminal intent is met upon proof of conscious action....").

quire a finding of scienter for conviction.[103] The few exceptions do not imply a non-punitive effect, given the assumption of scienter for those exceptions and the fact that a reasonable-mistake-of-age defense is allowed in a charge of statutory rape.[104] This factor therefore receives little weight in our analysis; it weakly implies a punitive effect.

### 4. The traditional aims of punishment

We next ask "whether [the statute's] operation will promote the traditional aims of punishment—retribution and deterrence."[105] Although in *State v. Chaney* we identified four objectives of criminal sentencing—rehabilitation, isolation, deterrence of defendant

and others, and reinforcement of societal norms[106]—the *Mendoza–Martinez* test focuses on retribution and deterrence.[107] The state argues that the registration and dissemination provisions are not retributive and that any deterrent effects of registration and dissemination are only incidental to the provisions' regulatory function.

But ASORA's application to a broad spectrum of crimes regardless of their inherent or comparative seriousness[108] refutes the state's argument and suggests that such retributive and deterrent effects are not merely incidental to the statute's regulatory purpose. Every person convicted of a sex offense must provide the same information, and the state publishes that information in

**103.** *See infra* Part III.C.5; *Kansas v. Hendricks,* 521 U.S. 346, 362, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997) (determining that statutory scheme allowing civil commitment of sexually violent predators is not punitive, in part because no finding of scienter is required, since commitment determination is based on "mental abnormality" or "personality disorder" rather than on criminal intent).

**104.** *State v. Guest,* 583 P.2d 836, 839 (Alaska 1978) ("To refuse such a defense would be to impose criminal liability without any criminal mental intent."). AS 11.41.445(b) provides:

> In a prosecution under AS 11.41.410–11.41.440, whenever a provision of law defining an offense depends upon a victim's being under a certain age, it is an affirmative defense that, at the time of the alleged offense, the defendant
> (1) reasonably believed the victim to be that age or older; and
> (2) undertook reasonable measures to verify that the victim was that age or older.

**105.** *Mendoza–Martinez,* 372 U.S. at 168, 83 S.Ct. 554.

**106.** *State v. Chaney,* 477 P.2d 441, 444 (Alaska 1970). We there identified as objectives of sentencing:

> [R]ehabilitation of the offender into a noncriminal member of society, isolation of the offender from society to prevent criminal conduct during the period of confinement, deterrence of the offender himself after his release from confinement or other penological treatment, as well as deterrence of other members of the community who might possess tendencies toward criminal conduct similar to that of the offender, and community condemnation of the individual offender, or in other words, reaffir-

mation of societal norms for the purpose of maintaining respect for the norms themselves. *Id.* The legislature subsequently codified the *Chaney* factors:

> In imposing sentence, the court shall consider
> (1) the seriousness of the defendant's present offense in relation to other offenses;
> (2) the prior criminal history of the defendant and the likelihood of rehabilitation;
> (3) the need to confine the defendant to prevent further harm to the public;
> (4) the circumstances of the offense and the extent to which the offense harmed the victim or endangered the public safety or order;
> (5) the effect of the sentence to be imposed in deterring the defendant or other members of society from future criminal conduct;
> (6) the effect of the sentence to be imposed as a community condemnation of the criminal act and as a reaffirmation of societal norms; and
> (7) the restoration of the victim and the community.

AS 12.55.005.

**107.** *Mendoza–Martinez,* 372 U.S. at 168, 83 S.Ct. 554. The Third Circuit Court of Appeals has explained its interpretation of the distinction between the three terms:

> Retribution is vengeance for its own sake. It does not seek to affect future conduct or solve any problem except realizing "justice." Deterrent measures serve as a threat of negative repercussions to discourage people from engaging in certain behavior. Remedial measures, on the other hand, seek to solve a problem....

*Artway v. Attorney Gen. of N.J.,* 81 F.3d 1235, 1255 (3d Cir.1996).

**108.** AS 12.63.100(6), which defines "sex offense," indicates that ASORA applies to persons convicted of a range of offenses, including AS 11.41.427, sexual assault in the fourth degree, a class A misdemeanor, and AS 11.41.434, sexual

the same manner, whether the person was convicted of a class A misdemeanor or an unclassified felony. ASORA's only differentiation is in the frequency and duration of a person's duty to register and disclose.[109] But at any given moment the registration list does not distinguish those individuals the state considers to pose a high risk to society from those it views as posing a low risk. ASORA determines who must register based not on a particularized determination of the risk the person poses to society but rather on the criminal statute the person was convicted of violating.

In *Kansas v. Hendricks* the Supreme Court determined that the Kansas Sexually Violent Predator Act is not retributive because "it does not affix culpability for prior criminal conduct." [110] That act is not triggered by a criminal conviction, but rather by criminal conduct; it applies to individuals charged with sexually violent offenses but who may be absolved of criminal responsibility.[111] The Supreme Court there stated that "[a]n absence of the necessary criminal responsibility suggests that the State is not seeking retribution for a past misdeed." [112] But as we discuss in Part III.C.5, ASORA applies only to those convicted of specified offenses.[113]

Moreover, in *Smith v. Doe* the Supreme Court noted that the state had conceded that ASORA "might deter future crimes," [114] an effect that would be punitive. Although the state has made no similar concession in this appeal, it is significant that the state there admitted that the same statute on the same facts currently before us could have deterrent effects. The state argues here that, in the Supreme Court's words, it "would severe-

ly undermine the Government's ability to engage in effective regulation" [115] to determine that a law is punitive because it also deters. We assume for sake of discussion that a statute limiting registration requirements and public dissemination to the extent necessary to protect the public could have a deterrent effect that would be merely incidental to its non-punitive purpose. But ASORA's registration and unlimited public dissemination requirements provide a deterrent and retributive effect that goes beyond any non-punitive purpose and that essentially serves the traditional goals of punishment.

**5. Application only to criminal behavior**

Under the fifth factor we consider "whether the behavior to which [the statute] applies is already a crime." [116] The fact that a statute applies only to behavior that is already, and exclusively, criminal supports a conclusion that its effects are punitive.[117] When analyzing ASORA the Supreme Court asserted in *Smith* that this factor was "of little weight in this case." [118] The Court there stated that conviction is "a necessary beginning point, for recidivism is the statutory concern." [119] But if recidivism, i.e., new sexual misconduct, were the only concern, the statute would apply not just to convicted sex offenders but to other individuals who may pose a threat to society even if they were not convicted. See, for example, the Washington registration act, upheld by the Ninth Circuit; it includes sex offenders not found guilty—including those incompetent to stand trial, those found not guilty by reason of insanity, and those committed as sexual psychopaths or sexually violent predators—as well as those who are convicted.[120] The Utah regis-

---

109. AS 12.63.020.

110. *Kansas v. Hendricks*, 521 U.S. 346, 362, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997).

111. *Id.; see* KAN. STAT. ANN. §§ 59–29a02(a), 59–29a03(a) (2000).

112. *Hendricks*, 521 U.S. at 362, 117 S.Ct. 2072.

113. AS 12.63.100(5).

114. *Smith*, 538 U.S. at 102, 123 S.Ct. 1140.

115. *Hudson v. United States*, 522 U.S. 93, 105, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997).

116. *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963).

117. *Id.*

118. *Smith*, 538 U.S. at 105, 123 S.Ct. 1140.

119. *Id.*

120. *Russell v. Gregoire*, 124 F.3d 1079, 1091 (9th Cir.1997); *see also* WASH. REV.CODE § 4.24.550(1)(c)-(e) (2005).

abuse of a minor in the first degree, an unclassified felony (the most serious type of felony).

tration act, also constitutionally upheld, includes those found not guilty on the ground of mental incapacity.[121]

As the state concedes, ASORA applies only to those "convicted" of specified offenses.[122] Defendants charged with sex offenses but who plead out to non-sex offenses such as coercion or simple assault do not have to register even though they may have engaged in the same conduct as individuals who do have to register.[123] Likewise, even convicted defendants whose convictions are overturned for reasons other than insufficiency of evidence of guilt do not have to register despite having engaged in the same conduct.[124] An adult who commits sexual abuse of a minor in the first degree by engaging in sexual penetration with a person under thirteen years of age,[125] but whose conviction is overturned due to an illegal search, does not have to register. Finally, ASORA does not require registration for those charged with sex offenses but acquitted, even though they may have engaged in the same conduct as convicted sex offenders and might even be found civilly liable under a lesser standard of proof.

It is true that ASORA applies to individuals who either enter a plea of or are found "guilty but mentally ill."[126] But we do not read this inclusion to make the scope of ASORA the same as that of the Washington and Utah registration acts previously discussed. Because including this class of offenders again looks to guilt, applying ASORA to those found guilty but mentally ill does not demonstrate any non-punitive effect.

In other words, ASORA fundamentally and invariably requires a judgment of guilt based on either a plea or proof under the criminal standard. It is therefore the determination of guilt of a sex offense beyond a reasonable doubt (or per a knowing plea), not merely the fact of the conduct and potential for recidivism, that triggers the registration requirement. Because it is the criminal conviction, and only the criminal conviction, that triggers obligations under ASORA, we conclude that this factor supports the conclusion that ASORA is punitive in effect.[127]

#### 6. Advancing a non-punitive interest

We next ask whether, in the words of the Supreme Court, "an alternative purpose to which [the statute] may rationally be connected is assignable for it."[128] We translate this as an inquiry whether ASORA advances a legitimate, regulatory purpose. ASORA can rationally be viewed as advancing a non-punitive purpose.[129] When it enacted ASORA the legislature found that:

(1) sex offenders pose a high risk of reoffending after release from custody;

(2) protecting the public from sex offenders is a primary governmental interest;

(3) the privacy interests of persons convicted of sex offenses are less important than the government's interest in public safety; and

(4) the release of certain information about sex offenders to public agencies and the

---

**121.** *Femedeer v. Haun,* 227 F.3d 1244, 1251–52 & n. 3 (10th Cir.2000); *see also* UTAH CODE ANN. § 77–27–21.5(1)(f)(v) (2003).

**122.** AS 12.63.100(5).

**123.** *See Whitehead v. State,* 985 P.2d 1019 (Alaska App.1999) (defendant charged with three counts of sexual assault but who pleaded guilty to coercion did not have to register because he was not convicted sex offender under ASORA).

**124.** AS 12.63.100(3).

**125.** AS 11.41.434(a)(1).

**126.** *See* AS 12.63.100(3).

**127.** *See Smith,* 538 U.S. at 113, 123 S.Ct. 1140 (Stevens, J., dissenting):

No matter how often the Court may repeat and manipulate multifactor tests that have been applied in wholly dissimilar cases involving only one or two of these three aspects of these statutory sanctions, it will never persuade me that the registration and reporting obligations that are imposed on convicted sex offenders *and on no one else* as a result of their convictions are not part of their punishment. (Emphasis in original.)

**128.** *Mendoza–Martinez,* 372 U.S. at 168–69, 83 S.Ct. 554.

**129.** *Doe I v. Otte,* 259 F.3d 979, 991 (9th Cir. 2001), *rev'd sub nom. Smith v. Doe,* 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003).

general public will assist in protecting the public safety.[130]

The Ninth Circuit stated that the state's non-punitive interest in public safety "unquestionably provides support, indeed, the principal support, for the view that the statute is not punitive for Ex Post Facto Clause purposes."[131] The Supreme Court also stated that ASORA's rational connection to a non-punitive purpose was a "[m]ost significant" factor in its determination that ASORA is non-punitive in effect.[132] We likewise conclude that ASORA advances a non-punitive interest.

### 7. Closeness of connection of means to the state's interest in public safety

Finally, we determine "whether [ASORA] appears excessive in relation to the alternative purpose assigned."[133] In analyzing this factor the Ninth Circuit addressed the scope of individuals subject to ASORA and the breadth of its dissemination provision; it determined that ASORA makes "information as to all sex offenders ... available without any restriction and without any regard to whether the individual poses any future risk."[134] The Ninth Circuit consequently concluded that ASORA's "non-punitive purpose, while of unquestioned importance, does not serve to render a statute that is so broad and sweeping non-punitive."[135]

The Supreme Court also addressed the scope and magnitude of ASORA's registra-

tion requirements and its dissemination provision, but concluded that ASORA is not excessive in relation to the state's interest in public safety.[136] In so deciding it determined that "[t]he Ex Post Facto Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences,"[137] and that the duration of ASORA's reporting requirements and what the Court called ASORA's "passive" notification system are not so excessive as to be effectively penal.[138]

The Court stated that the excessiveness inquiry is "not an exercise in determining whether the legislature has made the best choice possible to address the problem it seeks to remedy. The question is whether the regulatory means chosen are reasonable in light of the nonpunitive objective."[139]

As the legislature found when enacting ASORA, "protecting the public from sex offenders is a primary governmental interest."[140] The state certainly has a valid interest in addressing not just the egregious and highly publicized crimes that gave rise to the Megan's Law movement,[141] but also other crimes of which the risk of repetition and grave harm is sufficiently predictable to justify the protections afforded by ASORA. But in the context of our ex post facto inquiry, we have an obligation to determine whether the means chosen to carry out legitimate purposes are excessive, i.e., not close enough to be classified as non-penal.

---

**130.** Ch. 41, § 1, SLA 1994.

**131.** *Otte*, 259 F.3d at 991, *rev'd sub nom. Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003).

**132.** *Smith*, 538 U.S. at 102, 123 S.Ct. 1140 (citing *United States v. Ursery*, 518 U.S. 267, 290, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996)).

**133.** *Mendoza–Martinez*, 372 U.S. at 169, 83 S.Ct. 554.

**134.** *Otte*, 259 F.3d at 992, *rev'd sub nom. Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003).

**135.** *Id.* at 994.

**136.** *Smith*, 538 U.S. at 103–05, 123 S.Ct. 1140.

**137.** *Id.* at 103, 123 S.Ct. 1140.

**138.** *Id.* at 104–05, 123 S.Ct. 1140.

**139.** *Id.* at 105, 123 S.Ct. 1140.

**140.** Ch. 41, § 1, SLA 1994.

**141.** Megan's Law takes its name from Megan Kanka, a seven-year-old girl sexually assaulted and murdered in 1994 near her home in New Jersey. The man convicted of her murder was a neighbor who, unbeknownst to the victim's parents, had prior convictions for sex offenses against children. Her murder generated a national movement for mandatory registration for sex offenders and community notification. *See generally* Jonathon Simon, *Megan's Law: Crime and Democracy in Late Modern America*, 25 LAW & SOC. INQUIRY 1111, 1134–35 (2000).

We use "means" here to include the scope of the statute and the obligations it imposes on those subject to it and what the state can or must do in enforcing it.

It is significant that ASORA's scope is broad; it encompasses a wide array of crimes that vary greatly in severity.[142] Moreover, ASORA provides no mechanism by which a registered sex offender can petition the state or a court for relief from the obligations of continued registration and disclosure.[143] "Offenders cannot shorten their registration or notification period, even on the clearest determination of rehabilitation or conclusive proof of physical incapacitation."[144] Doe successfully completed a treatment program and was granted early release from mandatory parole. A superior court granted him legal custody of his minor daughter based on its determination that he was successfully rehabilitated and posed "a very low risk of re-offending."[145] Despite this evidence of rehabilitation, ASORA requires Doe to register quarterly and requires the state to publicly disseminate his personal information for the rest of his life.[146]

Under ex post facto analysis we further conclude that the statute's chosen means are excessive in relation to the statute's purpose because the statute is also underinclusive. As we discussed in Part III.C.5, ASORA only applies to those convicted of specified offenses.[147] It therefore excludes from its requirements individuals who may have committed the same acts and may pose threats to the public but who avoided conviction by pleading to a lesser charge or whose convictions were overturned. We do not mean to suggest that making the statute more inclusive would necessarily resolve ex post facto issues or that such changes would otherwise be constitutionally unobjectionable, but we point to this feature to illustrate that ASORA has a punitive effect.

ASORA also imposes obligations that, for ex post facto purposes, are excessive in relation to the state's legitimate public safety interest. It is significant that the registration and re-registration requirements are demanding and intrusive[148] and are of long duration.[149]

Finally, the provisions authorizing or requiring the state to disseminate the information are sweeping. ASORA is much broader than the Connecticut statute that authorizes courts to order the state to restrict dissemination if the court finds that dissemination is not required for public safety and that publication of the information would likely reveal the identity of the victim.[150] ASORA is much closer to the Kansas statute struck down on ex post facto grounds by the Kansas Supreme Court because of its "unrestricted public access ... [that] goes beyond that necessary to promote public safety."[151]

We are not balancing the rights of sex offenders against the rights of their vic-

---

142. *See supra* note 108.

143. *See Smith*, 538 U.S. at 117, 123 S.Ct. 1140 (Ginsburg, J., dissenting) ("And meriting heaviest weight in my judgment, the Act makes no provision whatever for the possibility of rehabilitation...."). Beginning January 1, 2009, ASORA allows for some judicial determination of a registrant's risk: "the court may order a defendant convicted [after January 1, 2009] of a violation of AS 11.41.410 or 11.41.434 where the victim of the offense was under 13 years of age to be subject to electronic monitoring up to the maximum length of probation on the person's release from a correctional facility." Ch. 42, §§ 2, 6, SLA 2008. But even as amended to provide for this limited risk determination for the two specified crimes, ASORA does not authorize a court to determine that a registrant poses no risk to society and consequently to altogether relieve him of registration and disclosure obligations.

144. *Smith*, 538 U.S. at 117, 123 S.Ct. 1140 (Ginsburg, J., dissenting).

145. *Otte*, 259 F.3d at 983, *rev'd sub nom. Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003).

146. AS 12.63.010(d)(2).

147. AS 12.63.100(5).

148. *See supra* notes 70, 71, and 75 and accompanying text.

149. *See supra* notes 72 and 74 and accompanying text.

150. *See* Conn. Gen.Stat. § 54–255(a), (b) (2001).

151. *State v. Myers*, 260 Kan. 669, 923 P.2d 1024, 1043 (1996).

tims.[152] Rather, we are determining for ex post facto purposes whether the means chosen to protect the public have consequences to sex offenders that significantly go beyond the state's valid interest in public safety, and exclude individuals who may pose equivalent threats to public safety. Some sex offender registration statutes employ means that have been held to relate rationally and closely enough to the state's interest in public safety. For example, the Second Circuit concluded that the notification policy adopted by the Connecticut Office of Adult Probation was "not excessive in relation to its purpose of enhancing public awareness and helping to prevent the recovering offender from harmful relapses."[153] Connecticut allows certain sex offenders convicted between October 1, 1988 and June 30, 1999 to "petition the court to order the Department of Public Safety to restrict the dissemination of the registration information to law enforcement purposes only and to not make such information available for public access."[154] Connecticut also provides certain sex offenders the possibility of avoiding registration and dissemination upon a judicial determination that registration or public dissemination is not required for public safety.[155]

 "A statute is not deemed punitive simply because it lacks a close or perfect fit with the nonpunitive aims it seeks to advance."[156] Although the non-punitive aims are undeniably legitimate and important, ASORA's registration and dissemination provisions have consequences to sex offenders that go beyond the state's interest in public safety; we must therefore conclude that the Alaska statute is excessive in relation to the state's interest in public safety.

### 8. ASORA's effect

Summing up the effects under the seven factors, we conclude that ASORA's effects are punitive, and convincingly outweigh the statute's non-punitive purposes and effects. We recognize that several of the factors seem closely related, and that discussion of one may overlap discussion of another. Nonetheless it is not the mere number of factors that leads us to our conclusion, but our assessment of those factors and their relative weight. Six of those factors lead us to disagree, respectfully but firmly, with the Supreme Court's analysis and its ultimate conclusion that ASORA is not penal.[157] Our decision is consistent with what we consider to be the compelling comments of dissenting justices in *Smith*[158] and with the majority of the Ninth Circuit Court of Appeals panel that, before reversal, discerned an ex post facto violation under federal law.[159]

---

**152.** *Id.* at 1043.

**153.** *Roe v. Office of Adult Prob.*, 125 F.3d 47, 55 (2d Cir.1997).

**154.** CONN. GEN.STAT. § 54–255(c) (2001). For example, a sex offender convicted of a sexual offense against a minor who, at the time of the offense, was under the age of eighteen and related to the sex offender within a specified degree of kindred may petition the court to order restricted dissemination. *Id.* § 54–255(c)(3). "The court may order the Department of Public Safety to restrict the dissemination of the registration information to law enforcement purposes only and to not make such information available for public access, provided the court finds that dissemination of the registration information is not required for public safety." *Id.* § 54–255(c).

**155.** *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 9–10, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003) (Souter, J., concurring). For example, a court may exempt a convict from registration if his offense was sexual contact with a minor aged between thirteen and sixteen years of age while the offender was more than three years older than the minor, if the offender was under the age of nineteen at the time of the offense. CONN. GEN.STAT. § 54–251(b) (2001).

**156.** *Smith v. Doe*, 538 U.S. 84, 103, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003).

**157.** Given the significance of the state's interest here, the author of this opinion emphasizes that in his view the result the court reaches today does not mean that no sex offender registration act could ever satisfy Alaska's ex post facto standard. Although six of the factors convince us that ASORA as written is punitive, registration and disclosure are not inherently punitive.

**158.** *Smith v. Doe*, 538 U.S. 84, 110–14, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) (Stevens, J., dissenting); *Smith v. Doe*, 538 U.S. 84, 114–18, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) (Ginsburg, J., dissenting).

**159.** *Doe I v. Otte*, 259 F.3d 979, 993–95 (9th Cir.2001), *rev'd sub nom. Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003).

Because ASORA compels (under threat of conviction) intrusive affirmative conduct, because this conduct is equivalent to that required by criminal judgments, because ASORA makes the disclosed information public and requires its broad dissemination without limitation, because ASORA applies only to those convicted of crime, and because ASORA neither meaningfully distinguishes between classes of sex offenses on the basis of risk nor gives offenders any opportunity to demonstrate their lack of risk, ASORA's effects are punitive. We therefore conclude that the statute violates Alaska's ex post facto clause.[160]

## IV. CONCLUSION

Because ASORA's registration, disclosure, and dissemination provisions violate the protection against ex post facto laws afforded by the Alaska Constitution as it applies to defendants who committed their crimes before the legislature enacted ASORA, we hold that AS 12.63.100(3) cannot be applied to Doe. We consequently REVERSE the final judgment for the state, and REMAND for entry of judgment for Doe.

BRYNER and CARPENETI, Justices, not participating.

FABE, Chief Justice, dissenting.

FABE, Chief Justice, dissenting.

I disagree with the court's conclusion that ASORA violates the ex post facto clause of the Alaska Constitution. The court maintains that its "reliance on the multifactor effects test is consistent with our past use of federal law in resolving state ex post facto claims." But our past decisions have firmly

established a practice of interpreting the Alaska ex post facto clause "no differently" than its federal counterpart.[1] The court now purportedly applies that federal test to the facts of this case: "[t]he intent-effects test provides an appropriate analytical framework here." But the court's decision directly conflicts with the United States Supreme Court's application of the same test to the same statute.[2] As we have concluded in the past, this case presents "no reason for us to interpret Alaska's constitutional provision differently."[3]

The court defends its expansion of Alaska's constitutional protections against ex post facto litigation as "consistent with what the federal standards appear to have been before 2003, when the Supreme Court decided *Smith.*" But the *Smith* Court announced no intention to depart from the standards that it had previously created or to alter the *Mendoza–Martinez* multifactor effects test. The *Smith* Court reasoned that its "examination of [ASORA's] effects leads to the determination that [Doe] cannot show, much less by the clearest proof, that the effects of the law negate Alaska's intention to establish a civil regulatory scheme."[4] Despite this court's implication that the United States Supreme Court misapplied the Federal Ex Post Facto Clause, today's decision actually broadens the protections of Alaska's ex post facto clause beyond that of the Federal Constitution. Thus, the court must justify its departure from our established practice of interpreting the Alaska and federal ex post facto clauses as coextensive. Today's decision, however, fails to do so.

160. Because we decide that applying ASORA to Doe violates the protection against ex post facto laws afforded by the Alaska Constitution, we do not reach Doe's due process arguments. Because ASORA requires both affirmative conduct by the registrant (in registering, re-registering, and disclosing) and public dissemination of most of the disclosed information, we do not have to decide whether a statute requiring only registration or providing only for distribution of otherwise public information from an offender's criminal file would have been an ex post facto law. And because we conclude that ASORA is an ex post facto law under the same standard for reviewing ex post facto claims under the Alaska

Constitution that courts apply under the Federal Constitution, we decline to adopt the standard Doe advocates.

1. *State v. Coon,* 974 P.2d 386, 391–92 (Alaska 1999).

2. *See Smith v. Doe,* 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003).

3. *Danks v. State,* 619 P.2d 720, 722 (Alaska 1980).

4. *Smith,* 538 U.S. at 105, 123 S.Ct. 1140.

Of course, "we have the authority and, when necessary, duty to construe the provisions of the Alaska Constitution to provide greater protections than those arising out of the identical federal clauses." For example, we have devised our own sliding-scale test to implement "Alaska's more stringent equal protection standard,"[5] which we have held "protects Alaskans' right to non-discriminatory treatment more robustly than does the federal equal protection clause."[6] We have held that the state constitution entitles Alaskans to a jury trial where the Federal Constitution does not.[7] And we have interpreted the Alaska Constitution's mandate that "[n]o person shall be put in jeopardy twice for the same offense"[8] to extend beyond the Federal Constitution's double jeopardy protections.[9] But where we have expanded Alaskans' constitutional protections beyond federally required minimums, we have recognized a "duty to move forward in those areas of constitutional progress which we view as necessary to the development of a civilized way of life in Alaska."[10]

We have never recognized broader protections under the Alaska Constitution's ex post facto clause as compared to the Federal Constitution's.[11] In *Danks v. State*, we examined an ex post facto challenge to a habitual offender statute.[12] As in this case, the United States Supreme Court had rejected a challenge to a similar statute under the federal clause.[13] Accordingly, we held that the Su-

preme Court decision disposed of Danks's federal claim, and we saw "no reason for us to interpret Alaska's constitutional provision differently."[14] In *State v. Anthony*, we rejected challenges under the state and federal ex post facto clauses to a law that deprived certain felons of receiving the annual permanent fund dividend.[15] Our analysis did not differentiate between the two clauses and noted the parties' agreement "that the ex post facto prohibition of the Alaska Constitution is the same as that of the United States Constitution."[16]

As in this case, *State v. Creekpaum*[17] involved a sex offender. Creekpaum was charged with sexual assault over five years after the alleged assault took place. At the time that Creekpaum allegedly committed his offense, a five-year limitations period applied. But the legislature subsequently extended that period. In rejecting Creekpaum's challenge to the new limitations period under the state and federal ex post facto clauses, we relied almost exclusively on United States Supreme Court precedents in similar cases and once again declined "to construe our parallel *ex post facto* prohibition—article I, section 15—differently from the federal provision."[18]

Finally, in *State v. Coon*, we rejected a claim that our adoption of new evidentiary rules for the admission of scientific evidence violated "federal and state constitutional pro-

**5.** *Alaska Civil Liberties Union v. State,* 122 P.3d 781, 787 (Alaska 2005) (Article I, section 1 of the Alaska Constitution requires "equal treatment of those similarly situated.").

**6.** *State, Dep't of Health & Soc. Servs. v. Planned Parenthood of Alaska, Inc.,* 28 P.3d 904, 909 (Alaska 2001).

**7.** *Baker v. City of Fairbanks,* 471 P.2d 386, 401–02 (Alaska 1970).

**8.** Alaska Const. art. I, § 9.

**9.** *Whitton v. State,* 479 P.2d 302, 309–10 (Alaska 1970).

**10.** *Baker,* 471 P.2d at 401.

**11.** *See State v. Coon,* 974 P.2d 386, 391–92 (Alaska 1999); *State v. Anthony,* 816 P.2d 1377, 1378 (Alaska 1991); *State v. Creekpaum,* 753 P.2d 1139, 1144 (Alaska 1988); *Danks,* 619 P.2d at

722. The Alaska Court of Appeals has employed the same analysis for both the Alaska and federal ex post facto clauses. *Patterson v. State,* 985 P.2d 1007, 1011–13 (Alaska App.1999), *overruled on other grounds by Doe v. State,* 92 P.3d 398 (Alaska 2004).

**12.** 619 P.2d at 722.

**13.** *See Gryger v. Burke,* 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948).

**14.** *Danks,* 619 P.2d at 722.

**15.** 816 P.2d at 1377–79.

**16.** *Id.* at 1378, n. 1.

**17.** 753 P.2d at 1140.

**18.** *Id.* at 1143.

hibitions on ex post facto legislation." [19] Our decision in *Coon* followed from an analysis of federal precedent and our explanation that "[w]e construe our state prohibition no differently than the federal prohibition." [20]

These decisions leave no doubt that our practice of treating the state and federal ex post facto clauses coextensively is settled precedent. The court's decision today, recognizing broader protections under the Alaska Constitution, casts a pall of uncertainty upon our earlier decisions. The court nevertheless declares that its decision "does not overrule or depend on overruling any prior decision of this court, nor does it depart from any past holding of this court." This assertion ignores the plain language of our previous holdings and alters the doctrine of stare decisis beyond recognition.

We have explained that "a prior decision may be abandoned because of 'changed conditions' if 'related principles of law have so far developed as to have left the old rule no more than a remnant of abandoned doctrine, [or] facts have so changed[,] or come to be seen so differently, as to have robbed the old rule of significant application." [21] Perhaps one could view the ongoing development of federal case law, and the United States Supreme Court's *Smith* decision in particular, as a "changed condition." But the court makes no attempt to frame its decision in such a manner. Instead, the court fails to recognize that today's decision is indeed "inconsistent with the analytical approach we have approved for deciding ex post facto claims under the Alaska Constitution."

Because the court has decided to overrule our settled practice of construing the Alaska Constitution's ex post facto clause "no differently than the federal prohibition," [22] it must meet the higher threshold raised by the principle of stare decisis. In my opinion, that threshold has not been met. Stare decisis demands that we adhere to past precedent unless "we are clearly convinced the rule was originally erroneous or is no longer sound because of changed conditions, and that more good than harm would result from a departure from precedent." [23] Assuming *arguendo* that the Supreme Court's decision in *Smith* upsets our reliance on Federal Ex Post Facto Clause jurisprudence, I remain unconvinced that departing from our precedents to invalidate ASORA would result in more good than harm. Alaska is not alone in passing legislation that responds to this public safety threat.[24] In 1994 Congress passed the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act,[25] which conditions federal funding to assist law enforcement on established guidelines for state sex offender registration programs. Alaska's sex offender registration program forms one small part of a nationwide comprehensive regulatory program.

Nothing in the court's analysis gives reason to depart from our established practice of interpreting Alaska's ex post facto clause to mirror the protections of the United States Constitution. Our adherence to this practice has not proceeded automatically, and it has reflected our regard for the judgments of the United States Supreme Court in this area. Accordingly, I respectfully dissent.

---

**19.** 974 P.2d at 391.

**20.** *Id.* at 391–92.

**21.** *Pratt & Whitney Canada, Inc. v. Sheehan,* 852 P.2d 1173, 1176 (Alaska 1993) (quoting *Planned Parenthood of Se. Penn. v. Casey,* 505 U.S. 833, 855, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992)).

**22.** *Coon,* 974 P.2d at 391–92.

**23.** *State v. Dunlop,* 721 P.2d 604, 610 (Alaska 1986) (quoting *State v. Souter,* 606 P.2d 399, 400 (Alaska 1980), *overruled on other grounds by Dun-*

*lop,* 721 P.2d at 610 (internal quotation marks omitted)).

**24.** By 1996 legislators in every state of the union had enacted laws to regulate sex offenders after their release. *Doe,* 538 U.S. at 89, 123 S.Ct. 1140; *Conn. Dep't of Pub. Safety v. Doe,* 538 U.S. 1, 4, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003).

**25.** *See Doe,* 538 U.S. at 89, 123 S.Ct. 1140 (discussing 42 U.S.C. § 14071).